440 So.2d 205 (1983)
STATE of Louisiana, Plaintiff-Appellee,
v.
Wallace ANDERSON, Defendant-Appellant.
No. CR82-821.
Court of Appeal of Louisiana, Third Circuit.
October 12, 1983.
Rehearing Denied November 28, 1983.
*208 Hardy M. Parkerson, Lake Charles, Charles Schrumpf, Sulphur, for defendant-appellant.
Leonard Knapp, Jr. and Karen Lee Price, Lake Charles, for plaintiff-appellee.
Before DOMENGEAUX, FORET and YELVERTON, JJ.
DOMENGEAUX, Judge.[*]
The defendant, Wallace Anderson, was indicted by the Calcasieu Parish Grand Jury on charges of aggravated rape under La. R.S. 14:42, and attempted aggravated rape under La.R.S. 14:42 and 14:27. These charges arose from an incident in December, 1981, involving the defendant, and two juveniles. Following his plea of not guilty,[1] defendant was tried jointly before a twelve (12) member jury on both charges and was found guilty on each count.[2]
The trial court sentenced the defendant to the mandatory penalties for aggravated rape and attempted aggravated rape, i.e., life imprisonment without benefit of parole, probation or suspension of sentence on the former and fifty (50) years imprisonment on the latter, the second sentence to be served consecutively to the first.
On this appeal from his conviction and sentence, the defendant has presented fifteen assignments of error, which are as follows:
(1) The trial court erred in failing to allow the attorneys for defendant to rehabilitate the defendant after he was impeached for prior convictions.
(2) The trial court erred in using the responsive verdicts effective on the trial date (October 1982) in its charge and interrogatories to the jury, when the alleged offense occurred in December 1981.
(3) The trial court erred in using an improper and unconstitutional jury instruction in stating that the jury may find that the *209 defendant intended the natural and probable consequences of his acts.
(4) The trial court erred in failing to give the amended written jury charges to defendant's counsel, although defendant had requested a copy of the charge that was read to the jury.
(5) The trial court erred in allowing, over defendant's objection, hearsay evidence from police officers as to what the alleged victims had told police officers concerning defendant's actions.
(6) The trial court erred in recognizing Barbara Ray as an expert in the field of serology.
(7) The trial court erred in allowing the prosecutor in closing argument to allude to evidence which was not in the record and highly prejudicial; specifically, evidence that Barbara Ray had stated that she had found type O blood on the defendant's underwear, when in fact, Barbara Ray had stated that she was unable to type the blood on the underwear.
(8) The trial court erred in allowing into evidence certain photographs taken by police, which were not included in the State's answers to defendant's motion for discovery; nor were the photographs made available to defendant's counsel when defense counsel inspected the State's evidence at the Sheriff's Department pursuant to the written authorization furnished to defendant's counsel by the State of Louisiana in satisfaction of the defendant's motion for discovery; and in failing to timely amend and supplement its answers to discovery prior to trial in violation of Code of Criminal Procedure Articles 718 and 729.3.[3]
(9) The trial court erred in prejudicing the jury by calling down the defendant in front of the jury, although the defendant had done nothing wrong; the court addressed him in a hostile tone, ordering him to take gum out of his mouth, when in fact he merely had a speech impediment.
(10) The trial court erred in allowing into evidence, over defendant's objection, a rape kit without the State having proved a proper chain of evidence and without a proper foundation having been lain for an introduction of same.
(11) The trial court erred in limiting defendant's counsel's closing arguments, when defense counsel attempted to analogize to similar fact situations and cases.
(12) The trial court erred in finding that the evidence presented by the State was sufficient to show a rape beyond a reasonable doubt and to exclude every reasonable hypothesis of innocence.
(13) The trial court erred in allowing the State, in its closing arguments to refer to evidence which was not in the record with regard to who called the police.
(14) The trial court erred in not placing the witnesses for the State under a sequestration order, after defendant had requested by motion that all witnesses be placed under the rule of the court.
*210 (15) The trial court erred in allowing prospective jurors who had been summoned to have their names withdrawn from the jury venire, or excusing such jurors without notifying defense counsel of the reasons for so excusing the prospective jurors.
FACTS
On Saturday, December 5, 1981, during late afternoon, two Lake Charles police officers, Detective Reinecke and Officer Barfield, responded separately to an anonymous call[4] that a possible rape was in progress in an abandoned apartment at 613 Armstrong Street. Detective Reinecke arrived at the location first and observed a single automobile parked in the apartment complex's driveway. In that vehicle were two black juveniles, Brenda Anderson (age 14) and Philip August (age 9). Before approaching the car, Reinecke inquired without success of several pedestrians as to who had called the police. Upon logging in the license number of the automobile, Reinecke was joined by Officer Barfield, and the two saw a black female standing at an upstairs window pointing to the apartment below.
Before proceeding further, the officers asked the children in the parked car what was wrong. Brenda, who was crying at that time, stated that her "daddy" had just raped her and that he had her little sister inside the apartment at that moment.[5] She also told the officers that the defendant ("daddy") had a knife. Finding the door heavily padlocked, the officers entered the apartment through a window and promptly arrested the defendant whose clothes were "disarranged [and] kind of dirty."[6] Melissa August (Brenda's younger sister), age 10, was found tucking her shirt in her pants and arranging her clothes, and when she was asked by the officers what had happened, she answered "that Wallie [defendant] was getting ready to do it to her." Melissa showed the officers where the defendant had hidden the knife when he heard them entering the apartment. At the time of the offenses, the defendant was free on a weekend pass from Angola, where he was serving a prison term on a conviction for manslaughter.[7]
ISSUES
ASSIGNMENT OF ERROR NO. 1
By this assignment defendant alleges that the trial court erred in refusing to allow his attorneys to rehabilitate him after he had been impeached by references to prior convictions. During his counsel's examination the defendant admitted that he had been convicted for manslaughter and had been serving a prison term for that offense since 1979. The defendant further admitted to his prior convictions for other felony crimes.[8] The State referred twice, as set forth below, to defendant's manslaughter conviction during its cross-examination of him:
"Q. Now, Mr. Anderson, you told this jury that you've been convicted of manslaughter, you killed a human being, right?
"A. Yes, ma'am."
and
"Q. Then the eighth one, moving up in the world, [sic] convicted of killing somebody, huh?
"A. Yes, ma'am."
Upon his redirect examination, the defendant was asked by his counsel to "tell [the jury] about the manslaughter." The State's objection to that question and the answer it *211 sought to elicit was sustained by the trial judge.[9]
Defendant contends that the trial court's refusal to allow him to be rehabilitated by explaining the details of his prior conviction for manslaughter violated fundamental fairness, inasmuch as the State is allowed to cross-examine the defendant about the details of the prior crime in order to show its true nature. See State v. Kimble, 407 So.2d 693 (La.1981); La.R.S. 15:495. It is well established that the prosecution may question the defendant as to the details of prior convictions in order to impeach his credibility. However, that questioning must be of a limited nature and may not go into far-reaching and irrelevant matters, which might prejudice the rights of the accused. State v. Talbert, 416 So.2d 97 (La.1982); State v. Connor, 403 So.2d 678 (La.1981); State v. Oliver, 387 So.2d 1154 (La.1980). The extent of the State's inquiry which is allowable depends upon the facts of each case, and the trial judge's discretion in determining the scope of prosecutorial questioning is great and will not be disturbed on appeal absent a showing of abuse. State v. Chaney, 423 So.2d 1092 (La.1982); State v. Thompson, 364 So.2d 908 (La.1978).
In the case sub judice the State did not go into the details of defendant's manslaughter conviction, and we cannot find that the trial judge erred in refusing to allow the defendant to go into those details. Nor was defendant denied due process of the law or fundamental fairness under these facts. The defendant chose to admit to the prior convictions, and the State did not elaborate upon the circumstances surrounding the crimes committed. We do not find it necessary to add to the accused's panoply of rights by overruling the trial court's correct determination that defendant's attempted redirect examination was irrelevant. Allowing one to explore the circumstances of a previous conviction under the nebulous assertion that he should be allowed to rehabilitate himself, when he himself has provided the source of impeachment, would do nothing more than circumvent the rule that irrelevant evidence is not admissible. La.R.S. 15:441.[10]
Clearly, the defendant's attempt to introduce the facts surrounding his previous conviction for manslaughter would not have tended to prove or disprove any material fact in his trial for aggravated rape and attempted aggravated rape.[11]State v. Hathorn, 395 So.2d 783 (La.1981). The trial court did not err in denying defendant the right to introduce irrelevant testimony, and this assignment, accordingly has no merit.
Defendant argues, for the first time in brief, that the State's references at trial to other convictions not admitted to by defendant during his direct examination were improper impeachment under the United States Supreme Court's ruling in Loper v. Beto, 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972). The court in Loper held that the State's use of prior uncounselled convictions for impeachment purposes so prejudiced the defendant under the facts of that case that his conviction must be vacated and remanded. That case involved the testimonies of only the victim and the defendant, the latter's credibility being severely damaged by the introduction of convictions for which he had not been afforded the right to counsel.
In the instant case, the defendant admitted under direct examination to his prior convictions for manslaughter, forgery and aggravated battery. However, upon cross-examination the State questioned him about prior convictions for non-support, *212 simple escape, and attempted theft (it appears from the sheriff's records that defendant may not have been convicted of attempted theft). Assuming arguendo that defendant did preserve his objection to this line of questioning, we cannot find that an error has been committed or that the defendant has been prejudiced.
Louisiana jurisprudence has adopted the Loper rule, but it has expressly placed the burden upon the defendant to establish that the convictions used to impeach him were unconstitutionally obtained. See State v. Roland, 379 So.2d 721 (La.1979). See also State v. Nicholas, 397 So.2d 1308 (La.1981). A careful examination of the record indicates that defense counsel never attempted to establish that the prior convictions were unconstitutionally obtained. See State v. Bernard, 326 So.2d 332 (La.1976).
Additionally, we note that the convictions referred to by the State were lesser in degree than the ones admitted to by defendant, and the defendant was not, therefore, prejudiced by their relatively slight degree of impeachment value. We find this to be especially true in light of the overwhelming evidence of defendant's guilt. This contention is, accordingly, meritless.
ASSIGNMENT OF ERROR NO. 2
Defendant alleges that an error occurred when the trial judge provided to the jury a list of responsive verdicts, effective on the trial date (October 1982), but which had not been in effect on the date of the offenses at issue. In support of his proposition, defendant cites State v. Ferguson, 358 So.2d 1214 (La.1978). We find that case and its adherence to the rule set forth in State v. Martin, 351 So.2d 92 (La.1977), to be applicable to the instant facts.
Defendant was charged with having committed both an aggravated rape (upon Brenda Anderson) and an attempted aggravated rape (upon Melissa August). The offenses were established to have occurred in December 1981, and at that time the responsive verdicts to these crimes were as follows:
Aggravated Rape
1. Guilty;
2. Guilty of attempted aggravated rape;
3. Guilty of simple rape;
4. Guilty of forcible rape;
5. Guilty of attempted forcible rape; or
6. Not guilty.
Attempted Aggravated Rape
1. Guilty;
2. Guilty of attempted forcible rape;
3. Guilty of attempted simple rape; or
4. Not guilty.
La.C.Cr.P. Art. 814 A(8), (9).
However, the trial judge instructed the jury as to the responsive verdicts effective on the trial date. Acts 1982, No. 763, § 1 had amended Article 814 A(8) and (9), and those amended forms were in effect in October 1982. The responsive verdicts in the amended article, which the trial judge provided to the jury, are set forth below:
Aggravated Rape
1. Guilty;
2. Guilty of Attempted aggravated rape;
3. Guilty of forcible rape;
4. Guilty of attempted forcible rape;
5. Guilty of sexual battery; or
6. Not guilty.
Attempted Aggravated Rape
1. Guilty;
2. Guilty of attempted forcible rape; or
3. Not guilty.
La.C.Cr.P. Art. 814 A(8), (9).
Relying upon State v. Ferguson, supra, and State v. Martin, supra, we hold that the trial judge properly applied the listing of responsive verdicts in effect on the date of defendant's trial. The Supreme Court in Martin squarely held that amendments providing for different responsive verdicts were procedural changes and that the controlling law as to procedural matters is the one in existence at the time of trial. 351 So.2d at 93. The court in Ferguson reiterated the Martin rule, but affirmed the trial judge's decision not to include instructions as to forcible rape being a crime responsive to aggravated rape, because the *213 crime of forcible rape had not been legislatively identified when the offenses at issue in that trial had occurred. That decision correctly recognized that the enactment of the crime of forcible rape was a substantive change, which could only act prospectively, thereby precluding a conviction for a crime which was not in existence at the time of occurrence. 358 So.2d at 1221-1222. See also State v. English, 367 So.2d 815, 821 (La.1979).
Our decision is not affected by the inclusion of "guilty of sexual battery" as an additional responsive verdict to which defendant would not have been subjected in December 1981, the date of the offenses in question. That crime had been legislatively defined on that date and has remained unchanged to this time. The substantive rights of the defendant were not, therefore, affected by a prohibited retroactivity. Additionally, we note that it appears anomalous for one to allege that he was prejudiced, when he was convicted of the precise crime charged, despite the existence of arguably erroneous lesser responsive verdicts which were found to be inappropriate by the trier of fact. See State v. Prestridge, 399 So.2d 564, 578 (La.1981); State v. Beavers, 394 So.2d 1218, 1229 (La.1981) (Justice ad hoc Stoker). For the aforementioned reasons, the trial judge properly utilized the responsive verdicts effective at the time of defendant's trial, and this assignment is without merit.
ASSIGNMENT OF ERROR NO. 3
By this assignment defendant alleges that the trial judge committed reversible error by instructing the jury that it "may find that the defendant intended the natural and probable consequences of his acts." Defendant relies, for his proposition, upon the United States Supreme Court decision in Sandstrom v. Montana, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), and its adoption by our state Supreme Court in State v. Heads, 385 So.2d 230 (La.1980).
The rationale of those two decisions was recently capsulized in State ex rel. Ross v. Blackburn, 403 So.2d 719 (La.1981) (Justice ad hoc Laborde), as follows:
"The defense urges that this instruction violated the recent case of Sandstrom v. Montana, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) and State v. Heads, 385 So.2d 230 (La.1980). In Sandstrom, supra, the United States Supreme Court found an instruction that `the law presumes that a person intends the ordinary consequences of his voluntary acts' suggestive of serious constitutional problems since such a presumption could have the effect in a deliberate homicide prosecution of shifting the burden to the defendant to show that he lacked the requisite mental state of the crime, or create a conclusive presumption of intent against the defendant. A jury's inference that the presumption was mandatory and irrebuttable would alleviate the state's burden of proving beyond a reasonable doubt every element of the crime charged, in violation of the mandate of In Re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).
This Court applied the rationale of Sandstrom in State v. Heads, supra, a first degree murder case where the same instruction was given, i.e., `a man is presumed to intend the natural and probable consequences of his acts.' This Court held:
`As in Sandstrom, the jury could have interpreted the instruction as either shifting the burden of proving intent to defendant or creating a conclusive presumption of intent against defendant. Since intent, an essential element of the crime charged, was the main issue in the case and was also the subject of the erroneous instruction, we are unable to say that the error was harmless beyond a reasonable doubt. Hence, we must remand the case to the district court for a new trial consistent with the views expressed by the United States Supreme Court in Sandstrom v. Montana, supra.'" At 721.
However, in Sandstrom and Heads the juries were instructed that one is presumed to intend the natural and probable consequences of his acts. In the instant case the *214 jurors were told only that they "may find that the defendant intended the natural and probable consequences of his acts." We do not find that this statement impermissibly shifts the burden of proof to the defendant as had occurred in Sandstrom and Heads.
The jury had correctly been instructed that the burden of proving beyond a reasonable doubt every element of the crimes charged lay with the State. The context of the instructions complained of is provided herein:
"Each of these crimes require[s] a certain type of criminal intent. Criminal intent may be specific or general.
"Specific criminal intent is that state of mind which exists when the circumstances indicate, that the defendant actively desired the prescribed criminal consequences to follow his act or failure to act.
"General criminal intent is present when the circumstances indicate that the defendant must have averted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act. A general criminal intent is always present when there is a specific intent.
"Whether criminal intent is present must be determined in light of ordinary experience. Intent is a question of fact which may be inferred from the circumstances.
"You may find the defendant intended the natural and probable consequences of his act."
It is clear that the jury was never instructed as to an impermissible presumption against defendant, and the burden of proving the defendant's intent was properly placed upon the State. See State v. Harris, 383 So.2d 1, 11 (La.1980); State v. Vaughn, 431 So.2d 763 (La.1983). This assignment lacks merit.
ASSIGNMENT OF ERROR NO. 4
Defendant contends that the trial court erred in failing to honor his counsel's request for a written copy of the amended charges. Article 801 of the Code of Criminal Procedure requires that the defendant be given a copy of the jury charges, if he requests that they be reduced to writing. Under the instant facts defense counsel had received a copy of the charges, which the trial judge intended to read to the jury. Prior to the reading of those charges, the parties met in chambers to discuss proposed amendments.
During the in-chambers conference, the charges were discussed in detail, and each party made individual notes of the slight changes on his original copy of the charges. The trial court told the parties that he would add the discussed changes to the charge he would read to the jury, and at no time prior to that reading did the defendant request a copy of the amended charge. The issue before this court is whether the trial judge committed reversible error in failing to provide defense counsel with a copy of the amended charges. We hold that he did not.
Two factors are significant in our determination. First, is the fact that defense counsel participated in the discussion regarding the changes to be made to the jury instructions/charges. He could not, therefore, claim that he was surprised by the charges read to the jury. We further note that the amendments were of no significant consequence, and no showing has been made that defendant was prejudiced by the reading of the charges. Second, and of equal importance, is our observation that it was not until after the jury retired for its deliberations that the defendant complained that he had not been given a written copy of the amended charges. Defendant made no request of the trial judge to be provided a copy of the document he was reading.
Although it may be argued that it would have been more consonant with the spirit and intent of La.C.Cr.P. Article 801 for the trial court to have provided defendant a copy of the amended charges, we cannot say that reversible error occurred. Defendant's failure to contemporaneously object to the lack of a revised copy constituted an acquiescence to the trial court's reading of the charges and therefore waived any objections *215 to the matter upon appeal. La.C. Cr.P. Art. 841. Additionally, we do not find that any substantial, or insubstantial, rights of the defendant have been prejudiced. Accordingly, this assignment is meritless.
ASSIGNMENT OF ERROR NO. 5
By this assignment defendant alleges that the trial court erred in allowing the two arresting officers to testify, over defense counsel's objections, as to statements made by the victims which strongly incriminated defendant with the crimes for which he was convicted.[12] The testimony of which defendant complains is as follows:
"Q. I ask you again, Detective Reinecke. What did Brenda tell you when you went up to the car?
"A. I asked her what the problem was. She was crying. She looked at me and said that ...
* * * * * *
"Q. Answer the question.
"A. She told me. She said my daddy raped me and he has my little sister inside now."
* * * * * *
"Q. What did you [Detective Reinecke] do with Melissa in that room that you had labeled 1, sir?
"A. I asked her if she was all right. She said yes. And then I asked her what had happened.
"Q. What did she tell you?
"A. She told me that Wallie [defendant] was getting ready to do it to her."
Officer Barfield also testified that he heard Brenda tell Detective Reinecke that "her daddy had raped her."
We note that defendant was convicted of separate crimes against each victim and that, technically, the statements attributed to Brenda and Melissa are to be considered only as to defendant's conviction on the applicable crime. However, we find the same rationale controlling as to each statement and see no need to make further unnecessary distinctions.
There is no doubt that the officers provided hearsay testimony:
"Hearsay evidence is testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court assertor. State v. Drew, 360 So.2d 500 (La.1978); State v. King, 355 So.2d 1305 (La.1978). Hearsay evidence is inadmissible except under one of the statutory or well-recognized exceptions. La.R.S. 15:434."
State v. Hatcher, 372 So.2d 1024, 1031 (La. 1979) (On original hearing).
The issues before us are whether the testimony falls under an exception to the hearsay rule and, if it does not, whether the error in its admission so prejudiced the defendant as to require a reversal of his convictions.
Defense counsel asks this court to give unmerited weight to the fact that the victims, ages 14 and 10, were responding to questions by police officers when they gave statements incriminating defendant. In support of this proposition is cited State v. Hunter, 340 So.2d 226 (La.1976). In that case, the Louisiana Supreme Court held admissible the hearsay statements of the victim which identified her attackers under the "early complaint of a rape victim" exception. Supra, at 233. Without attributing any weight to or elaborating upon it, the Court noted that the victim's statements were not made in response to police interrogation. We disagree with defendant's attempted interpretation.
In a host of decisions the Louisiana Supreme Court has affirmed lower courts' decisions allowing the hearsay testimony of rape victims' statements which incriminated the accused. State v. Middlebrook, 409 So.2d 588 (La.1982); State v. Prestridge, *216 399 So.2d 564 (La.1981); State v. Hatcher, supra; State v. Elzie, 351 So.2d 1174 (La. 1977); State v. Noble, 342 So.2d 170 (La. 1977); State v. Hunter, 340 So.2d 226 (La. 1976); State v. Brown, 302 So.2d 290 (La. 1974); State v. Pace, 301 So.2d 323 (La. 1974). Each of those cases involved different aged victims with different periods of time between the sexual attack and the statements of its commission. For example, in Prestridge, supra, the victim was 10 years of age and told her babysitter, in response to the latter's questioning, on the morning after the rape, of its occurrence and the identity of the perpetrator. The court in Prestridge held the statements to be admissible under the "original [early] complaint" exception. And, in Elzie, supra, the victim's statements were elicited only after repeated questioning.
In Noble, supra, two days had transpired between the crime and the four year old victim's statement. And, in Hatcher, supra, the court held admissible the hearsay testimony of a fourteen year old girl's statements, when she had refused initially to respond to her mother's questions, but subsequently told her sister that she had been raped. We find the following language of State v. Adams, 394 So.2d 1204 (La.1981) (Justice ad hoc Guidry), to be persuasive:
"This Court has previously recognized that in prosecutions of sex offenses the better rule is that the original complaint of a young child is admissible when the particular facts and circumstances of the case indicate that it was a product of the shocking episode and not a fabrication. State v. Pace, 301 So.2d 323 (La.1974); State v. Noble, 342 So.2d 170 (La.1977). In Noble, supra, the prosecutrix was a four year old child who made her statements identifying the perpetrator to her grandmother a full two days after the offense. The statement was held admissible because the circumstances indicated that the statement was made at the first opportunity the child had to speak to a close family member. In the instant case, there was a lapse of approximately eight to ten hours between the offense and the victim's statement to Ms. Hungerford. The record reflects that the victim's statement was the first complaint by the child concerning the perpetrator of the rape. Further, it was the first opportunity for the child to state the person who was responsible for her injury. There is no indication in the record that the child's statement was a product of fabrication, but rather, the circumstances reflect that the victim's response was merely a truthful answer to an adult's concerned inquiry. The child was upset and frightened and made her statement at the first reasonable opportunity under the particular facts and circumstances of this case." At 1212.
The instant facts reveal that Brenda was approached shortly after the rape by the officers and was asked what had happened. She stated that she had been raped. There is no suggestion that her answer was fabricated. Indeed, she confirmed at trial that she had been raped by defendant. The statements were so closely attached to the crime as to constitute a part of the res gestae, forming an exception to the hearsay rule from which is derived the "original complaint" exception. La.R.S. 15:447 and 15:448.[13]State v. Middlebrook, supra, at 590.
There was no significant or unexplained lapse of time between the occurrence of the rape and Brenda's statement to the officers. The record reflects that only a short period *217 of time had transpired.[14] We do not attach any significance to the observation that Brenda, upon crawling through the window subsequent to her rape, saw a neighborhood resident (apparently, the woman who initially called the police) and briefly told her, "Hello." No further conversation was had between the two. When the officers approached the car occupied by Brenda and Philip, Brenda was still crying from the traumatic and "shocking episode" she had been forced to endure. The attendant facts and circumstances (the victim's tender age, the short period of time involved, the nature of the crime, and that Brenda's statement was her first complaint of the rape) clearly support a finding that the officers' hearsay testimonies were admissible under the "early complaint" exception.
The foregoing analysis applies with even greater strength to Melissa's statements, as she was four (4) years younger than Brenda and as defendant was still in the apartment with her when she was arrested. This created a much more immediate circumstance, further supporting the admissibility of the victim's statements. See State v. Middlebrook, supra, at 590.
We observe, additionally, that, even had the statements been inadmissible, as hearsay, their entrance into evidence would have constituted nothing more than harmless error. Each of the victims had already testified that the crimes occurred exactly as they had initially told the officers. The testimony of the latter merely corroborated that already given by the victims, and it did not, therefore, prejudice defendant.[15]State v. McIntyre, 381 So.2d 408 (La.1980). For all of the aforementioned reasons, we hold that the trial court did not err in admitting the officers' testimony, and this assignment has an absence of merit.
ASSIGNMENT OF ERROR NO. 6
Defendant alleges by this assignment that the trial judge erred in accepting Barbara Ray as an expert witness in the field of serology. The applicable statute, La.R.S. 15:466, reads as follows:
"The test of the competency of an expert is his knowledge of the subject about which he is called upon to express an opinion, and before any witness can give evidence as an expert his competency so to testify must have been established to the satisfaction of the court."
This provision necessarily vests the trial judge with a great amount of discretion, and his determination as to the competency of an expert witness will not be upset unless the reviewing court is convinced that a clearly erroneous decision was made. State v. Sherer, 411 So.2d 1050 (La.1982); State v. Coleman, 406 So.2d 563 (La.1981); State v. Lawson, 393 So.2d 1260 (La.1981); State v. Williams, 386 So.2d 1342 (La.1980); State v. Drew, 360 So.2d 500 (La.1978), certiorari denied, 439 U.S. 1059, 99 S.Ct. 820, 59 L.Ed.2d 25. In our review of the record, we cannot find that the trial judge abused his great discretion in accepting Ms. Ray as an expert in the field of serology. That she had not been qualified as such an expert before this trial is of no consequence. To hold otherwise would preclude an "expert" from ever passing muster. This assignment has no merit.[16]
ASSIGNMENT OF ERROR NO. 7
By this assignment defendant argues that the trial court erred in allowing the prosecutor during her closing argument to allude *218 to evidence which was not in the record. Specifically, defendant complains of the prosecutor's statement that she
"[h]eard Miss Ray testify that there was type O blood. That type O blood was found on the victim's underwear. And that blood was found on the subject's [defendant's] underwear, but, [sic] it was so small that she couldn't type it."
A review of Ray's testimony reveals that the blood on the victim's (Brenda's) underwear was from Group A, not O. Ray also stated that she was unable to group the blood on defendant's underwear and that she did not know what his blood type was.
Initially, we note that defendant failed to preserve his right to raise this issue on appeal by failing to object contemporaneously. The trial judge was not afforded the opportunity to timely correct any alleged errors, and the defects now complained of are deemed to be waived. La.C.Cr.P. Art. 841; State v. Brogdon, 426 So.2d 158 (La.1983).
However, we do note that the standard for appellate reversal is whether we are convinced that the complained of remarks influenced the jury and contributed to its verdict. State v. Barrow, 410 So.2d 1070 (La.1982); State v. Lindsey, 404 So.2d 466 (La.1981). Applying that standard, we cannot find that defendant was prejudiced by the prosecutor's remarks or that the prosecutor's erroneous statement that the serologist (Ray) had found Group O blood, contributed to his guilty verdicts.
Closing arguments are to be limited to the evidence admitted, to the lack of evidence presented, to the conclusions of fact that may be drawn therefrom, and to the law applicable to the case. La.C.Cr.P. Art. 774; State v. Messer, 408 So.2d 1354 (La.1982). In the instant case, the State in closing referred to Group O blood, rather than to Group A, which had been the type entered into evidence. However, the erroneous reference to blood typing failed to prejudice defendant inasmuch as he was never linked to any blood group.
The error made by the State was, accordingly, of no consequence to the jury's verdict, and this assignment is without merit.
ASSIGNMENT OF ERROR NO. 8
Defendant contends that a reversible error was committed when the trial court allowed into evidence police photographs which were not included in the State's answers to the defendant's motion for discovery. The photographs (two) were taken at the scene of the crime, and defendant alleges that he was not made aware of their existence until the State sought to introduce them into evidence. In his motion for discovery, defendant requested to be allowed to inspect and reproduce any photographs in the State's possession, which were material and relevant to the issue of guilt or innocence. The State responded to this request by authorizing defendant to inspect the objects and items in the possession of the Lake Charles City Police or the Calcasieu Parish Sheriff's Office. Counsel stated that the photographs were not among the items he was allowed to view.
Under Article 718 of the Code of Criminal Procedure, defendant was entitled to inspect and reproduce the photographs if they were within the possession of the State. If they were not yet available, but subsequently became so, the State was under the continuing duty to disclose them to the defendant. La.C.Cr.P. Art. 729.3; State v. Strickland, 398 So.2d 1062 (La.1981). The remedies available for noncompliance are set forth in La.C.Cr.P. Article 729.5:
"A. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this Chapter or with an order issued pursuant to this Chapter, the court may order such party to permit the discovery or inspection, grant a continuance, order a mistrial on motion of the defendant, prohibit the party from introducing into evidence the subject matter not disclosed, or enter such other order, other than dismissal, as may be appropriate.
"B. In addition to the sanctions authorized in Part A hereof, if at any time *219 prior or subsequent to final disposition the court finds that either the state through the district attorney or assistant district attorney or the defendant or his counsel has willfully failed to comply with this Chapter or with an order issued pursuant to this Chapter, such failure shall be deemed to be a constructive contempt of court."
We observe that defendant did not request any of these remedies from the trial judge. He merely objected to the photographs on the grounds that they had not been described in the State's answer to the motion for discovery.
We shall assume that the State erroneously failed to comply with its duty to provide defendant access to the two photographs. However, we cannot find that this constituted reversible error. It is only when the defendant has been prejudiced by the State's failure to disclose that he is entitled to a reversal. State v. Mitchell, 412 So.2d 1042 (La.1982); State v. Vaccaro, 411 So.2d 415 (La.1982). In the instant case, there has been no suggestion that the State has acted other than in good faith in seeking to comply with defense counsel's discovery requests. Counsel did not allege at trial, nor in their briefs before this court, that defendant was prejudiced by the State's good faith omission, and we are unable to find any. See State v. Washington, 407 So.2d 1138, 1146 (La.1981) (Justice ad hoc Doucet). For the reasons cited above this assignment lacks merit.
ASSIGNMENT OF ERROR NO. 9
By this assignment defendant alleges that the trial court erred in speaking to him in a hostile tone, while they were in the presence of the jury. The record reveals that during his direct examination, the defendant was repeatedly asked by his counsel to speak so that he could be understood. The trial judge finally told the defendant to get rid of the gum or whatever other item was in his mouth, but he was told by defense counsel that the defendant didn't have anything in his mouth. We do not find that the defendant was spoken to in a "hostile tone", nor have we been informed as to the relief desired, or directed to any authority supporting an unnamed relief.
More importantly, we note that the defendant failed to lodge any objection before the trial judge, such that this issue is not properly before us. La.C.Cr.P. Art. 841. This assignment is, therefore, meritless.
ASSIGNMENT OF ERROR NO. 10
This assignment addresses the trial judge's decision to allow into evidence a rape kit performed on one of the victims, which defendant contends was entered without the State having proved the proper chain of evidence and without a proper foundation having been laid for its introduction. Initially, it should be observed that a continuous chain of custody need not be proven; it suffices if the evidence in its entirety establishes that it is more probable than not that the rape kit introduced into evidence was the one used on the victim (Brenda). State v. Sharp, 414 So.2d 752 (La.1982); State v. Davis, 411 So.2d 434 (La.1982). Any alleged deficiencies in the chain of custody are attributed to the weight of the evidence, not to its admissibility. State v. Tonubbee, 420 So.2d 126 (La. 1982).
In the instant case, the State established by the testimony of Detective Reinecke that he had been given the sealed rape kit performed upon Brenda by the examining physician, Dr. Tyson Barnes. Although the kit was not handed to Reinecke personally by Dr. Barnes, it did come from the nurse who assisted the physician in the preparation of the kit. Reinecke then delivered the completed kit to the official custodian of evidence at the Lake Charles Police Department and subsequently identified that kit positively at trial. We find that the State clearly satisfied its foundation and chain of custody requirements and that the rape kit was, therefore, properly admitted into evidence. This assignment is lacking in merit.
*220 ASSIGNMENT OF ERROR NO. 11
This assignment addresses the trial judge's ruling which sustained the State's objection to certain remarks made in closing argument by defense counsel. The pertinent colloquy is set forth as follows:
"MR. SCHRUMPF: ... Brenda's lying, Melissa's lying. Before you go back into the jury room to deliberate, of course, Ms. Oubre is going to get a chance to rebut any and all of my arguments because the burden is on her, because the burden of proof beyond a reasonable doubt is so great, she is going to get another attempt to talk to you. Before she does, I want you to remember just recently that men in Texas and Ohio were convicted of rape charges ...
MS. OUBRE: ... Objection, Your Honor.
THE COURT: Objection sustained.
MR. SCHRUMPF: Your Honor, merely an argument ... alluding to other cases.
MS. OUBRE: He can only refer to facts that were brought out on this witness stand in this courtroom.
THE COURT: Your [sic] objection is sustained, Mr. Schrumpf."
We have previously addressed (in assignment of error number seven) the permissible scope of closing arguments set forth in La.C.Cr.P. Art. 774. The trial judge has been afforded wide discretion in confining those arguments within the proper scope. State v. Toomer, 395 So.2d 1320 (La.1981). Defense counsel's reference to two other rape convictions in Texas and Ohio, unrelated to the facts introduced into evidence, was not within the proper scope of closing argument, and the trial court did not err in sustaining the State's objection to those remarks. See State v. Weathers, 320 So.2d 895 (La.1975). This assignment has an absence of merit.
ASSIGNMENT OF ERROR NO. 12
By this assignment defendant alleges that the State produced insufficient evidence to support the convictions for aggravated rape and attempted aggravated rape. We are required to review this argument under the standard set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), notwithstanding our constitutionally limited power of reviewing only questions of law in criminal cases. La. Const. Art. V, § 10.[17] See also State v. Gatson, 434 So.2d 1315 (La.App.3rd Cir. 1983) (with special concurrence by the author).
Applying the Jackson standard the Louisiana Supreme Court has held that a
"conviction cannot stand, unless, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the state proved the essential elements of the crime beyond a reasonable doubt. State v. Graham, 422 So.2d 123, 129 (La.1982)."
The crime of aggravated rape is defined in La.R.S. 14:42 as follows:
"Aggravated rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) Where the victim resists the act to the utmost, but whose resistance is overcome by force; or
(2) Where the victim is prevented from resisting the act by threats of great and *221 immediate bodily harm, accompanied by apparent power of execution; or
(3) Where the victim is prevented from resisting the act because the offender is armed with a dangerous weapon; or
(4) Where the victim is under the age of twelve years. Lack of knowledge of the victim's age shall not be a defense.
Whoever commits the crime of aggravated rape shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence."
And rape is defined in La.R.S. 14:41:
"Rape is the act of anal or vaginal sexual intercourse with a male or female person who is not the spouse of the offender, committed without the person's lawful consent.
Emission is not necessary; and any sexual penetration, vaginal or anal, however slight is sufficient to complete the crime.
For the purposes of this Chapter, a person shall not be considered to be a spouse if a judgment of separation from bed and board has been rendered."
An attempt has been legislatively designated in La.R.S. 14:27(A) as follows:
"Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose."
In reviewing defendant's conviction for the aggravated rape of Brenda Anderson, we find that the State presented sufficient evidence to satisfy the due process requirements of Jackson v. Virginia, and its Louisiana progeny.
In carefully reviewing the testimonies we cannot find that the defendant's purported alibis are supported by the evidence. Brenda testified without hesitation that, when she was alone in the vacant apartment with the defendant, he pulled out a knife and, holding it to her throat, threatened to kill her if she did not submit to him sexually. She unequivocally stated that sexual penetration occurred. Although the rape kit performed upon Brenda failed to indicate the presence of sperm, the negative inference created is lessened by the fact that the rape occurred during the victim's period of menstruation, and the State introduced expert testimony to the effect that this factor will lessen the possibility of detecting sperm.
The examining physician testified that he was unable to perform as thorough a physical examination upon the victim as he would have preferred, primarily because of her extreme discomfort and refusal to let him conduct a complete internal examination. However, he did note that the physical appearance of her vagina indicated that it had been irritated recently and, in his opinion, sexual penetration had recently occurred.
The defendant's fingerprints were not found on the knife seized by the officers, but the State's witness who examined the knife said he could not take any prints from it due to the rough nature of the blade and the tape on the handle. Both victims identified at trial the knife as being the one with which defendant threatened them. Additionally, the investigating officers testified that when they first saw Brenda in the car she was still crying from her prior ordeal, and she told them that she had just been raped by the defendant. We find that the evidence abundantly supports the jury's finding of guilt as to defendant's aggravated rape of Brenda Anderson. See State v. Dawson, 392 So.2d 445 (La.1980).
We also find that defendant's conviction for the attempted aggravated rape of Melissa August was supported by evidence sufficient to amply satisfy the review standards of Jackson v. Virginia. See State v. Washington, 430 So.2d 641 (La.1983). Brenda told the officers that the defendant was inside with Melissa and about to rape her also. When the defendant was arrested and searched the arresting officer detected that the defendant had an erection. Melissa *222 testified that the defendant told her to take off her clothes and that he had pulled down his pants prior to hearing the officers at the locked door. She also said that he threatened with his knife to kill her and her mother if she didn't submit to him sexually. Melissa promptly told the arresting officers that defendant was about to rape her also.
Defendant's contention that the State failed to prove that Melissa was less than twelve years old (for purposes of La.R.S. 14:42(4)) is equally without merit, as Melissa testified that she was eleven years old on the day of trial. See La.R.S. 15:430.1. Even if the age of this victim had not been established by the State, the evidence was sufficient to have convicted defendant under Sections 2 and 3 of La.R.S. 14:42. For all of these reasons, this assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 13
Defendant contends that the trial court committed reversible error in allowing the State in its closing argument to refer to evidence not in the trial record; specifically, the prosecutor's statements as to the identity of the anonymous phone caller to the police. This issue is not properly before us, as defense counsel failed to object contemporaneously to the complained of remarks (La.C.Cr.P. Art. 841), and the assignment, accordingly, is without merit.
ASSIGNMENT OF ERROR NO. 14
By this assignment defendant alleges that the trial court erred in not placing the State's witnesses under the rule of sequestration. Article 764 of the Code of Criminal Procedure requires that "upon request of the state or the defendant the court shall" order the witnesses to be sequestered. In the instant case the defendant did request such an order, which was granted by the trial judge. However, at the time of that order none of the State's witnesses were present, although the trial judge told the prosecutor that, when the State's witnesses appeared, they were to be instructed as to the sequestration order.
Defendant contends that this order was violated, as the State's witnesses were never sequestered. No support for this allegation has been provided, nor can we find that defendant properly afforded the lower court an opportunity to cure this purported defect as required by La.C.Cr.P. Art. 841. Of equal importance is our observation that defendant has failed to make any showing that he was prejudiced by a defective sequestration. La.C.Cr.P. Art. 921; State v. Tauzier, 397 So.2d 494 (La.1981); State v. Ardoin, 340 So.2d 1362 (La.1976). For these reasons, this assignment has no merit.
ASSIGNMENT OF ERROR NO. 15
In his last assignment defendant alleges that the trial court erred in excusing certain prospective jurors without notification to defense counsel and in excusing a prospective juror from service, when his name was drawn from the jury box during jury selection. The lower court's authority to excuse prospective jurors is set forth in La.C.Cr.P. Art. 783, in pertinent part as follows:
"A. The court may excuse a member of the petit jury venire at any time prior to the time he is sworn as a juror to try a particular case. The panel shall be selected from the remaining members of the petit jury venire. The court, either on its own motion, or that of the state or a defendant, may order the attachment of an absent and unexcused petit jury venireman.
B. If jury service, whether criminal or civil, would result in undue hardship or extreme inconvenience, the district court may excuse a person from such service either prior to or after his selection for the general venire, jury pool, or jury wheel. The court may take such action on its own initiative or on recommendation of an official or employee designated by the court."
In the case sub judice, the trial court released several jurors for health reasons.
We find the Supreme Court's recent ruling in State v. Brown, 414 So.2d 726 (La. 1982), to be controlling over this issue:
"The court is authorized to excuse a person from jury service either prior to or *223 after his selection for the general venire, jury pool or jury wheel if such service would result in undue hardship or extreme inconvenience. The court may take this action on its own initiative or on the recommendation of an official or employee designated by the court. See C.Cr.P. art. 783(B). We have held that a defendant need not be present when the trial judge excuses prospective jurors before his case is called for trial. State v. Edwards, 406 So.2d 1331 (La.1981); State v. Sheppard [350 So.2d 615], supra. The trial court is vested with broad discretion in excusing prospective jurors for undue hardship. State v. Ivy, 307 So.2d 587 (La.1975). This discretion to release prospective jurors in advance of voir dire examination is not to be disturbed unless there is a showing of fraud or collusion resulting in prejudice to the accused. State v. Edwards, supra; State v. Sheppard, supra. The defendant makes no allegation of fraud or collusion nor does the record give any indication of such; therefore, the court's action in releasing the proposed jurors will not be disturbed." At 728.
The present defendant has made none of the showings of prejudice, via fraud or collusion, referred to in Brown, supra, and we do not find that the lower court abused its great discretion in releasing sua sponte several prospective jurors due to their ill health. This assignment is, therefore, meritless and defendant's convictions and sentences for the crimes of aggravated rape and attempted aggravated rape are
AFFIRMED.
DOMENGEAUX, Judge, concurring.
I specially concur in this case which I authored, only insofar as the review of facts doctrine of Jackson v. Virginia, supra, and State v. Mathews, 375 So.2d 1165 (La.1979) is concerned. I reiterate the views stated in my previous concurring opinion in State v. Gatson, 434 So.2d 1315 (La.App. 3rd Cir. 1983). The continued application of the Mathews rationale relegates the appellate courts to nothing more than "second guessers" of the triers of fact.
NOTES
[*] For reasons assigned therein, the author of this opinion has also filed a concurring opinion.
[1] Defendant's requests for a sanity commission report and a hearing on same were granted, and he was found sane and able to proceed to trial.
[2] Ten (10) jurors voted guilty, one (1) voted not guilty, and one (1) did not vote.
[3] The articles provide:

Art. 718:
"Subject to the limitation of Article 723, on motion of the defendant, the court shall order the district attorney to permit or authorize the defendant to inspect, copy, examine, test scientifically, photograph, or otherwise reproduce books, papers, documents, photographs, tangible objects, buildings, places, or copies or portions thereof, which are within the possession, custody, or control of the state, and which:
(1) are favorable to the defendant and which are material and relevant to the issue of guilt or punishment, or
(2) are intended for use by the state as evidence at the trial, or
(3) were obtained from or belong to the defendant.
The court may determine whether evidence is subject to the provisions of Paragraph (1) hereof by in camera inspection."
Art. 729.3:
"If, subsequent to compliance with an order issued pursuant to this Chapter and prior to or during trial, a party discovers additional evidence or decides to use additional evidence and such evidence is or may be, subject to discovery or inspection under the order issued, he shall promptly notify the other party and the court of the existence of the additional evidence, so that the court may modify its previous order or allow the other party to make an appropriate motion for additional discovery or inspection."
[4] Apparently the call was received on the Crime Stoppers phone line at the Police Department.
[5] It appears that defendant may not have been the biological father of either victim, although Brenda bears his surname. Defendant and the victims' mother had a "common-law" marriage.
[6] During a patdown search of the defendant, Reinecke detected that the former had an erection.
[7] In 1979, defendant was sentenced to fifteen (15) years on that conviction.
[8] The other crimes admitted to were forgery and aggravated battery.
[9] Although the trial court's reasons for sustaining the objection were not provided expressly, the ruling appears to have been correctly based on the lack of relevancy of the defendant's response. La.R.S. 15:435 and 15:441.
[10] La.R.S. 15:441 states:

"Relevant evidence is that tending to show the commission of the offense and the intent, or tending to negate the commission of the offense and the intent.
"Facts necessary to be known to explain a relevant fact, or which support an inference raised by such fact, are admissible."
[11] Defendant made no proffer as to what his testimony would have established.
[12] Defendant argues for the first time in brief that the hearsay exception for the original complaints made by rape victims denies him (defendant) the equal protection of the law by making a special exception based on sex. Neither authorities nor rationale other than ipse dixit are set forth in support of this unexplained assertion. Nor are we aware of any.
[13] La.R.S. 15:447 states:

"Res gestae are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events. What forms any part of the res gestae is always admissible in evidence."
La.R.S. 15:448 states:
"To constitute res gestae the circumstances and declarations must be necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction."
[14] The actual length of time is unknown, but, due to the facts that the officers responded promptly to the call and that Melissa had not yet been raped, it appears that approximately fifteen (15) minutes had passed between Brenda's rape and her statement to the officers.
[15] Counsel for defendant alleges that he was denied his right to cross-examine the victims about their statements, as they testified before the officers did. No showing has been made that he attempted to have those witnesses recalled or that he timely raised this issue before the trial court. It presents, therefore, nothing for us to review. La.C.Cr.P. Art. 841.
[16] It is also noteworthy that Ms. Ray's testimony was corroborated by her supervisor, Mr. Francis Touchet, when he testified at trial. Neither Ms. Ray nor Mr. Touchet could provide any evidence linking the victims with any sexual activity. Therefore, defendant was not prejudiced by Ray's testimony. See La.C.Cr.P. Art. 921.
[17] "Section 10. (A) Jurisdiction. Except as otherwise provided by this constitution, a court of appeal has appellate jurisdiction of (1) all civil matters, (2) all matters appealed from family and juvenile courts, and (3) all criminal cases triable by a jury, except as provided in Section 5, Paragraph (D)(2) of this Article. It has supervisory jurisdiction over cases which arise within its circuit.

(B) Scope of Review. Except as limited to questions of law by this constitution, or as provided by law in the review of administrative agency determinations, appellate jurisdiction of a court of appeal extends to law and facts. In criminal cases its appellate jurisdiction extends only to questions of law.
(C) Other Criminal Matters. In all criminal cases not provided for in Paragraph (D)(2) or Paragraph (E) of Section 5 or Paragraph (A)(3) of this Section, a defendant has a right of appeal or review, as provided by law."