524 So.2d 526 (1988)
STATE of Louisiana, Appellee,
v.
Michael J. MIMS, Appellant.
No. 19450-KA.
Court of Appeal of Louisiana, Second Circuit.
March 30, 1988.
Rehearing Denied April 28, 1988.
*530 Culpepper, Teat, Caldwell & Avery by Bobby L. Culpepper, Jonesboro, for appellant.
William J. Guste, Jr., Atty. Gen., Barbara B. Rutledge, Asst. Atty. Gen., Baton Rouge, John C. Blake, Dist. Atty., Walter E. May, Asst. Dist. Atty., Jonesboro, for appellee.
Before MARVIN, FRED W. JONES, Jr. and LINDSAY, JJ.
LINDSAY, Judge.
The defendant, Michael J. Mims, was charged with one count of distribution of marijuana, and one count of possession of marijuana with intent to distribute, violations of LSA-R.S. 40:966. The defendant was tried before a jury and was found guilty as charged on both counts. The trial court sentenced the defendant to the maximum sentence under each count, ten years at hard labor and a fine of $15,000.00, and ordered that the sentences be served consecutively. On each count, the defendant was also ordered to serve an additional prison term of one year at hard labor in default of payment of the fine. The defendant originally appealed his convictions and sentences, urging numerous assignments of error, including objections to the exclusion of black prospective jurors by the state through the use of peremptory challenges. We remanded the case to the trial court for a hearing on this issue in accordance with Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1987). State v. Mims, 505 So.2d 747 (La.App. 2d Cir. 1987). A hearing was held in the trial court, following which the court ruled that the jury had been properly empaneled and therefore, the defendant's motion for mistrial was denied. Following that hearing, the defendant again appealed his convictions and sentences, reurging his original assignments of error and additionally objecting to the results of the Batson hearing. For the following reasons, we affirm the defendant's convictions, and affirm the trial court ruling regarding the Batson hearing, but we vacate the sentences and remand to the trial court for resentencing.

FACTS
On November 23, 1984, Glen Jackson called Deputy Keith Watkins of the Jackson Parish Sheriff's Department and told him that he could obtain marijuana from the defendant, Michael Mims. Deputy Watkins and another deputy, Steve Wyatt, went to Jackson's residence, picked him up, and returned to the sheriff's office. At the Sheriff's office, a $20.00 bill was obtained from Jackson. This bill was marked by *531 Deputy Watkins with a special ink, visible only under a black light. Watkins marked the bill with his initials, K.W. The bill was returned to Jackson.
At approximately 8 to 9 p.m., Wyatt, Watkins and Jackson got into Watkins' private vehicle and drove to East Hodge, Louisiana, where Mims operated a small store located in a metal building. Mims lived in a mobile home beside the store. The trio parked the vehicle out of sight of the store. Deputy Watkins positioned himself in front of the store and Deputy Wyatt went to the rear, in order to observe activities inside the store. Jackson entered the store. The deputies could see the defendant inside the store, behind the counter, and saw the defendant reach behind the counter and hand a package to Jackson. Jackson exited the store and the trio returned to their vehicle. Jackson was searched and his marked, $20.00 bill, previously on his person, was gone, but Jackson was in possession of a small paper bag containing three smaller plastic bags. These bags contained a vegetable substance later determined to be marijuana. Jackson informed the two deputies that the defendant said he had more marijuana in a safe place in his mobile home.
The deputies prepared a search warrant for the defendant's store and for the mobile home. The warrant was signed by a district court judge, and in the early morning hours of November 24, 1984, Watkins and Wyatt, along with three other deputies and the local police chief, Fred Ford, converged on the defendant's mobile home.
Chief Ford was the first officer to approach the mobile home, as he was the local police chief and he and Mims were acquainted. Ford knocked on the door and Mims answered. Shortly thereafter the other officers entered the mobile home and the search began.
Mims was arrested and allowed to dress. A search of Mims' clothing revealed the marked $20.00 bill which had previously been in Jackson's possession. In the living room of the mobile home, a deputy spotted a disconnected stereo speaker. There was a tear in the cloth on the front of the speaker. Upon examination, the front of the speaker was removed and a paper bag was discovered, containing approximately 1.7 pounds of a vegetable substance later determined to be marijuana. Inside the speaker the officer also found an envelope addressed to the defendant.
The store was also searched and marijuana gleanings were found behind the counter. The officers also found a set of scales and loose cigarette papers.
The defendant was charged by bill of information with one count of distribution of marijuana arising from the incident in the store on November 23, 1984 and one count of possession of marijuana with intent to distribute in connection with the marijuana found at his residence and in the store.
Counsel for the defendant filed several pretrial motions. On February 28, 1985, a motion to suppress was filed. After a hearing, the motion was denied on April 19, 1985. On September 11, 1985, a motion to quash the information was filed, alleging misjoinder of offenses. Shortly thereafter, another motion to suppress was filed. The trial court minutes indicate that both these motions were denied by the trial court on September 16, 1985 and a jury trial on the merits commenced immediately thereafter. However, after the case was tried, the jury was unable to agree upon a verdict. Accordingly, a mistrial was declared and a new trial date was set.
The present trial commenced on November 18, 1985. The defendant was tried before a jury and found guilty as charged.
The defendant originally appealed his convictions and sentences to this court alleging numerous assignments of error. In assignments of error 4 and 6, the defendant objected to the selection of an all white jury, claiming the trial court erred in failing to grant a mistrial because the tales jury venire, chosen at random from persons in the hallways of the courthouse after the regular jury venire was exhausted, was all white. We found this assignment of error to be meritless. State v. Mims, 505 So.2d 747 (La.App. 2d Cir.1987). The defendant also claimed that the trial court erred in failing to grant a mistrial because of a *532 pattern of racial discrimination in jury selection. He contended that he was tried by an all white jury at his first trial in September, 1985 and an all white jury was also selected in the instant trial.
The record of defendant's second trial showed that the prosecutor exercised peremptory challenges to exclude members of the defendant's race from the jury. The defendant claimed that a pattern of discrimination was thereby shown. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), held that a prosecutor's use of peremptory challenges to exclude blacks from a jury trying a black defendant may be a violation of equal protection. Batson specified that after establishment of a prima facie case of improper use of peremptory challenges, the state must provide racially neutral explanations for the challenges in order to avoid a mistrial. The United States Supreme Court subsequently decided the case of Griffith v. Kentucky, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). Griffith held that Batson applied retroactively to cases pending on direct appeal but not yet final. Therefore, pursuant to Batson and Griffith, supra, we remanded this case to the trial court for a hearing to allow the state an opportunity to provide an explanation for the actions taken in empaneling the jury. State v. Mims, supra.
On June 4, 1987, the hearing was held in the trial court and testimony was taken. The trial court ruled that the state provided adequate, racially neutral explanations for its exercise of peremptory challenges of prospective jurors. Therefore, the trial court declined to grant a mistrial.
The defendant has again appealed his convictions and sentences, reurging assignments of error 1 through 48 which were presented to this court in the defendant's original appeal. In addition, the defendant assigns errors 49 through 51, objecting to the trial court ruling that the exclusion of blacks from the jury by the state was not racially motivated.
For the following reasons, we affirm the defendant's convictions and we affirm the trial court ruling regarding the racial makeup of the jury. However, we vacate the sentences imposed upon the defendant and remand to the trial court for resentencing.

ASSIGNMENTS 1-3
The defendant begins his numerous assignments of error in this case with complaints concerning the selection of the jury. In his first assignment of error, defendant claims the trial court erred in excluding a prospective juror after it was learned she was no longer a resident of Jackson Parish. However, this assignment of error was not briefed nor argued in brief and it is therefore considered abandoned. State v. Domingue, 298 So.2d 723 (La.1974); State v. Williams, 338 So.2d 672 (La.1976).
In assignment of error two, the defendant argues the trial court erred in failing to grant his challenge for cause to a prospective juror who indicated on voir dire that he would hold it against the defendant if he did not testify. In assignment of error three, the defendant contends that the trial court erred in failing to grant his challenge for cause to excuse a prospective juror who was formerly employed by the Jackson Parish District Attorney's Office.
LSA-C.Cr.P. Art. 797 provides in pertinent part:
The state or the defendant may challenge a juror for cause on the ground that:
(1) The juror lacks a qualification required by law;
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;
*533 The juror will not accept the law as given to him by the court....
A trial judge is vested with broad discretion in ruling on challenges for cause, and only when it appears, upon review of the entire voir dire examination, that the judge's exercise of that discretion has been arbitrary or unreasonable, resulting in prejudice to the accused, will the court's ruling be reversed. Refusal to excuse for cause is not an abuse of discretion, notwithstanding that the juror has voiced an opinion seemingly prejudicial to the defense, where subsequently or on further inquiry or instruction, the juror has demonstrated a willingness and ability to decide the case impartially according to the law and the evidence. State v. Welcome, 458 So.2d 1235 (La.1983); State v. Wilson, 469 So.2d 1087 (La.App. 2d Cir.1985), writ denied 475 So.2d 778 (La.1985); State v. Murphy, 465 So.2d 811 (La.App. 2d Cir.1985).
The defendant objects that the trial court erred in failing to grant his challenge for cause of a prospective juror who was questioned concerning whether he would hold it against the defendant if the defendant did not testify. The juror responded that he would like to hear the defendant's "side of the story" as to what transpired, but on further examination, the juror clearly indicated that he would be able to fairly and impartially apply the law regarding a defendant's right against self-incrimination and the presumption of innocence as instructed by the trial court. Therefore, the trial court did not abuse its discretion in failing to grant defendant's challenge for cause of this juror.
The defendant also challenged for cause a prospective juror who had formerly been employed as a secretary in the Jackson Parish District Attorney's Office and who had worked for the current district attorney and also for the trial judge when he was the district attorney of Jackson Parish. On further examination, the juror stated that her former association with that office would not prejudice her ability to impartially view the facts of the case and she would apply the law as instructed by the trial court. Further, the prospective juror had never worked for the assistant district attorney who was prosecuting this case. Therefore, the trial court did not abuse its discretion in failing to grant defendant's challenge for cause of this juror. State v. Winn, 412 So.2d 1337 (La.1982); State v. Serigny, 481 So.2d 659 (La.App. 1st Cir.1985), writ denied 484 So.2d 667 (La.1986); State v. Smith, 466 So.2d 1343 (La.App. 3rd Cir.1985). Cf. State v. Lewis, 391 So.2d 1156 (La.1980); State v. Simmons, 390 So.2d 1317 (La.1980); State v. Mclntyre, 365 So.2d 1348 (La.1978).

ASSIGNMENTS 4 & 6
The defendant has, in this appeal, reurged all of his original assignments of error, including assignments 4 and 6 which dealt with the racial make-up of the jury. In assignment of error 4, the defendant argued the trial court erred in failing to grant a mistrial because the tales jury venire, chosen at random from persons in the hallways of the courthouse after the regular jury venire was exhausted was all white. We found this assignment of error to be meritless in our previous opinion. See State v. Mims, supra.
In assignment of error six, the defendant claimed the trial court erred in failing to grant a mistrial because of a pattern of racial discrimination in jury selection shown by the empaneling of an all-white jury. On the basis of this assignment of error, we remanded the case for further proceedings. The defendant complains of the results of those proceedings in this appeal. This issue will be considered and disposed of in our discussion of the trial court's Batson hearing.

ASSIGNMENT 49
In assignment of error forty-nine, the defendant claims the trial court erred in only allowing eight peremptory challenges when the law allows twelve peremptory challenges.
At the trial of this case in November of 1985, the trial court allowed the defendant and the prosecution eight peremptory challenges each. LSA-C.Cr.P. Art. 799, which previously set the number of peremptory *534 challenges at eight, was amended in the 1985 session of the legislature to allow twelve peremptory challenges. This change in LSA-C.Cr.P. Art. 799 became effective September 6, 1985. However, at the time of the trial, the defendant failed to make a contemporaneous objection to the number of peremptory challenges allowed by the trial court. LSA-C.Cr.P. Art. 841 provides that an irregularity or error cannot be availed of after verdict unless it was objected to at trial. Therefore, this assignment of error lacks merit.

ASSIGNMENT 5
In assignment of error five, the defendant argues the trial court erred in failing to grant a mistrial when, during voir dire, the tales jurors, before being selected as members of the jury, were allowed to go into the jury room with eleven jurors who had already been selected.
The record reflects that the jury venire and the impaneled jurors were removed from the courtroom in order for defense counsel to argue his motion for mistrial because of the selection of an all white tales jury venire. The tales jury veniremen were sworn and were undergoing voir dire examination at the time of their exclusion from the courtroom. This procedure was in accordance with the interests of justice as embodied in LSA-C.Cr.P. Art. 794. The impaneled jurors had not been sequestered by the trial court pursuant to LSA-C.Cr.P. Art. 791, or otherwise prohibited from contact with other citizens or veniremen. The defendant has not alleged any misconduct by the jurors and has failed to demonstrate how this action by the trial court prejudiced him in any manner. This assignment or error is meritless.

ASSIGNMENTS 7 & 13
In assignment of error seven, the defendant argues the trial court erred in allowing Deputy Sheriff Keith Watkins to testify as to statements made to him by Glen Jackson, who was also present at the trial and who was called as a witness.
Hearsay evidence is in-court testimony, or written evidence, of an out-of-court statement offered to show the truth of the matter asserted therein and resting for its value on the credibility of an out-of-court asserter. It is excluded based upon unreliability and the potential unfairness to the accused to permit introduction of statements which cannot be tested by cross-examining the out-of-court declarant. State v. Bazile, 386 So.2d 349 (La.1980).
However, when a law enforcement officer testifies concerning events leading to the arrest of a defendant, statements made to him by others during the course of the investigation are not hearsay, because they are not offered for the truth of the matter asserted, but merely to explain events leading to the arrest of the defendant. State v. Bazile, supra; State v. Turner, 392 So.2d 436 (La.1980); State v. Tucker, 405 So.2d 506 (La.1981); State v. Graham, 486 So.2d 1139 (La.App. 2d Cir. 1986), writ denied 493 So.2d 633 (La.1986); State v. Jackson, 452 So.2d 1225 (La.App. 2d Cir.1984).
The record indicates the state was attempting to elicit from Deputy Watkins the sequence of events leading to the arrest of the defendant. The testimony was offered to explain what had transpired, not to establish the truth of the information given by Jackson. Said another way, the testimony was offered to establish why law enforcement officers did what they did, not to establish that Jackson's words were true and indicative of the defendant's guilt. In addition, Jackson, the declarant, was a witness in the case and was present in court and available for cross-examination.
Therefore, this testimony was not inadmissible hearsay, the defendant was not denied his right to confrontation and the trial court did not err in overruling the defendant's objection to this testimony.
Closely tied to this assignment of error is assignment of error number thirteen, in which the defendant argues that the trial court erred in failing to grant a mistrial when Deputy Sheriff Keith Watkins testified, in response to questioning by defense counsel, that he accepted the statements of Glen Jackson for the truth of the same and not just because they were made.
*535 This assignment of error is again concerned with the statements made by Jackson to Watkins leading ultimately to the arrest of the defendant. In this assignment of error, the defendant again attempts to attack the statement previously admitted by the trial court. The statement by Watkins that he personally believed Jackson does not indicate, as defendant argues, that the statement was offered for the truth of the matter asserted. The statements made by Jackson to Watkins were offered to establish events leading to the arrest of the defendant and this questioning by defense counsel did not change the fact that the statements were not hearsay and were properly admissible. Therefore, assignment of error thirteen is also without merit.

ASSIGNMENTS 8, 9, 10, 22, 39, 41, 42 & 44
In assignments of error eight and nine, the defendant argues that the trial court erred in allowing the officers to testify as to the search of the mobile home and the store without laying a proper foundation to show that a search warrant had been issued, and without producing a search warrant in court. In assignment of error number ten, the defendant argues the trial court erred in allowing Deputy Keith Watkins to testify about the search warrant, without producing the search warrant or proving the validity of the search warrant. These assignments of error are closely tied to those assignments objecting to pretrial rulings by the trial court denying the defendant's motions to suppress the evidence which was obtained pursuant to the search warrant.
In assignments of error thirty-nine, forty-one, forty-two and forty-four, the defendant basically questions the validity of the search warrant for the mobile home and the store. In these assignments, the defendant claims that the trial court erred in failing to grant a mistrial when Jackson testified he did not make the statements attributed to him by the affiant in the affidavit in support of the search warrant. He also contends that the trial court erred in denying his motion to suppress on grounds that neither Jackson nor the affiant saw marijuana in the defendant's mobile home or store. The defendant also claimed that the search warrant was invalid in that Jackson did not tell the affiant that the defendant had the marijuana in his mobile home.
The judgments and minutes in this record indicate that two motions to suppress were denied by the trial court and a third motion to suppress was withdrawn by counsel of record. However, the defendant failed to designate as part of the record the transcripts of the hearings on the motions to suppress. A party moving for appeal shall request that portion of the proceedings necessary for review in light of the assignments of error to be urged and only that which is in the record may be reviewed. LSA-C.Cr.P. Art. 914.1; State v. Elliott, 467 So.2d 1144 (La.App. 2d Cir. 1985).
When neither the search warrant nor the affidavit in support of the search warrant are introduced at trial, the appellate court is without authority to supplement the record in that respect and the warrant will not be found defective on the defendant's mere contention to that effect. State v. Whorton, 440 So.2d 858 (La.App. 2d Cir.1983).
Because the defendant failed to designate that portion of the proceedings dealing with the validity of the search warrant, this court will not consider defendant's assignments of error objecting to the validity of that search warrant.
In assignment of error twenty-two, the defendant argues the trial court erred in failing to grant a mistrial when Fred Ford, Chief of Police of East Hodge, admitted that when he entered Mims' residence he did not have the search warrant in his physical possession, did not produce a search warrant, and lied to the defendant. This argument is without merit.
In the early morning hours of November 24, 1984, Chief Fred Ford went to Mims' residence along with Jackson Parish sheriff's deputies. Ford's presence was requested because Mims resided in his jurisdiction *536 and Mims knew Ford. Ford went to the door of Mims' residence first, knocked on the door and when Mims came to the door, Ford told him some of the equipment in the store was on fire. These actions were aimed at avoiding either destruction of the evidence or a resort to violence by Mims. Deputy Watkins, who was in possession of the search warrant, then entered the residence. The fact that Chief Ford was not in physical possession of the warrant, did not show it to the defendant, and initially misrepresented the reason for his presence, in order to prevent violence or destruction of evidence, did not vitiate the warrant.
Because there is no showing in the record that the search warrant and the resulting search were illegal or improper, these assignments of error are without merit.

ASSIGNMENT 11
In assignment of error eleven, the defendant argues that the trial court erred in admitting into evidence the crime laboratory's certificate of analysis of the marijuana because proper notice had not been given, the certificate was not in proper form, and the certificate did not comply with LSA-R.S. 15:499.
The defendant argues first that he did not receive proper notice pursuant to LSA-R.S. 15:501 that the crime laboratory certificate was to be introduced into evidence at trial. LSA-R.S. 15:501, at the time of trial,[1] provided as follows:
The party seeking to introduce a certificate made in accordance with LSA-R.S. 15:499 shall, not less than ten days prior to the commencement of trial, give written notice of intent to offer proof by certificate. Such notice shall include a copy of the certificate.
The state gave written notice to defendant's counsel of its intention to introduce the crime laboratory certificate into evidence and furnished a copy of that certificate in compliance with the statute. The notice was mailed on February 8, 1985 and a copy was filed into the record on February 11, 1985. This notice was given prior to the original trial which commenced September 16, 1985 and ended in a mistrial. The defendant argues that the state was required to re-notify him of its intent to use the laboratory certificate at least ten days prior to the commencement of the second trial in November of 1985. This argument is meritless.
The purpose of the statute is to inform a defendant that such a certificate exists and that it will be used against him. It prevents any confusion or surprise, and it aids the defendant in preparing an adequate defense. It also relieves crime lab personnel from the necessity of appearing at trial when there is no real question or issue surrounding the validity of the analysis performed by the crime lab technician. In the present case, the defendant had fair warning that the laboratory certificate existed, what it contained, and that the state intended to introduce it as evidence against him. The defendant does not show how he was prejudiced by the use of the certificate. The defendant cites no authority for his argument that a new notice was required following a mistrial. We conclude that the statute does not require a renewal of notice. Defendant's argument is meritless.
The defendant also claims the certificate was not in proper form as required by LSA-R.S. 15:499, which provides as follows:
All criminalistics laboratories established by laws of this state or by laws of the United States are authorized to make *537 proof of the results of laboratory examinations of physical evidence by the certificate of the person in charge of such laboratory. Such certificate shall list:
(1) The date and time such evidence was delivered to such laboratory.
(2) The name of the person making such delivery.
(3) The name of the person taking such delivery.
(4) A brief description of the evidence.
(5) The type of examination requested.
(6) The name of the person making the examination.
(7) The date or dates of the examination.
(8) The results of the examination; and
(9) The certificate of analysis shall be signed by the person making the examination and by the person in charge of the laboratory.
Defendant argues the certificate was not in proper form in that it did not specify that the substance analyzed and determined to be marijuana was an illegal type of marijuana. For the reasons set forth in our discussion of Assignment 27, we find this argument to be specious at best, and totally without merit.

ASSIGNMENT 14
In assignment of error number fourteen, the defendant claims the trial court erred in failing to grant a mistrial on the grounds that the state provided erroneous information in its response to the defendant's application for a bill of particulars. In the motion for bill of particulars, defendant sought to determine where the alleged controlled dangerous substance was being kept pending trial. The state indicated in its response that on February 11, 1985, the alleged controlled dangerous substance was in the possession of Deputy Keith Watkins. At trial, it was learned that the alleged controlled dangerous substance remained in the custody of the crime laboratory from the time of its analysis until the time of commencement of the original trial on September 16, 1985. The defendant claims he was prejudiced by this erroneous information in that he failed to subpoena any personnel from the crime laboratory to account for the whereabouts of the alleged controlled dangerous substance from February 11, 1985 until September 16, 1985. Defendant's argument is meritless.
The purpose of a bill of particulars is to provide the accused with sufficient information as to the nature and cause of the offense with which he is charged. State v. Frith, 436 So.2d 623 (La.App. 3rd Cir.1983), writ denied 440 So.2d 731 (La. 1983). In this case, the defendant was adequately informed of the charges against him.
Further, the inadvertent error by the state in this answer as to the actual location of the alleged marijuana did not prejudice the defendant. First, the defendant was aware that the alleged controlled dangerous substance was submitted to the crime laboratory for analysis and he had the opportunity to subpoena the crime lab personnel to appear at trial. Second, the defendant made no contention that the chain of custody of this evidence was broken. The chain of custody was clearly established at trial. All of the testimony relating to the marijuana clearly showed that the marijuana introduced into evidence at trial was the marijuana seized or obtained from the defendant. There is no indication that the marijuana had been altered in any way.
No prejudice is shown to have resulted from the misstatement in the answer to the motion for bill of particulars and defendant cites no jurisprudence in support of his claim. This claim has no merit.

ASSIGNMENTS 15-18
The defendant argues several assignments of error dealing with the expert testimony of Jim Tuten, a special investigator with the Lincoln Parish District Attorney's Office, regarding the procedures and techniques used by offenders who are involved in the illegal use and distribution of controlled dangerous substances, including marijuana.
On questions involving knowledge obtained only by means of special training or experience, the opinions of persons having such special knowledge are admissible as expert testimony. LSA-R.S. 15:464. Every *538 expert witness must state the facts upon which his opinion is based. LSA-R.S. 15:465. The test of competency of an expert is his knowledge of the subject about which he is called upon to express an opinion, and before any witness can give evidence as an expert his competency to so testify must have been established to the satisfaction of the court. LSA-R.S. 15:466.
In assignment of error fifteen, the defendant argues the trial court erred in finding that a field of expertise exists as to procedures and techniques involved in the illegal use and distribution of controlled dangerous substances.
Such a field of expertise has long been recognized. State v. White, 450 So.2d 648 (La.1984); State v. Clay, 408 So.2d 1295 (La.1982); State v. Carter, 347 So.2d 236 (La.1977). The trial court recognition of this field of expertise was not error.
In assignment of error sixteen, the defendant argues the trial court erred in allowing Tuten to qualify as an expert, when he had never previously qualified as such.
The trial court is granted much discretion regarding the competence of experts and that discretion will be upheld absent a showing of manifest abuse of discretion. State v. Rives, 407 So.2d 1195 (La.1981); State v. Green, 437 So.2d 302 (La.App. 2d Cir.1983), writ denied 443 So.2d 1121 (La. 1984). In the present case, there was a sufficient showing that Tuten, an investigator with several years experience in the investigation of drug trafficking, possessed the special knowledge and training necessary to qualify as an expert in the field of procedures and techniques involved in the illegal use and distribution of controlled dangerous substances. The defendant has made no showing of a manifest abuse of discretion by the trial court. Therefore, defendant's argument is meritless.
In assignment of error seventeen, the defendant argues the trial court erred in allowing Tuten to testify as to the value of controlled dangerous substances because his knowledge was based upon hearsay. Allowing a law enforcement officer to testify regarding the street value of narcotics in light of his special training and experience is accepted in our courts. State v. Brown, 479 So.2d 464 (La.App. 1st Cir. 1985). A witness must set forth the facts upon which his opinion is based. State v. Brown, supra. The witness in this case fully set forth the facts upon which his opinion was based and did not repeat any particular statement of an out-of-court declarant. This assignment of error is meritless.
In assignment of error eighteen, the defendant argues that the trial court erred in allowing Tuten to testify as to whether the controlled dangerous substance in this case was "home grown" or not. This testimony appears to be irrelevant. However, the defendant has made no showing of prejudice in the admission of the statement. LSA-C.Cr.P. Art. 921. Therefore, this assignment of error is without merit.

ASSIGNMENT 19
In assignment of error nineteen, the defendant argues the trial court erred in failing to grant a mistrial when the prosecuting attorney referred to the vegetable matter in question as "dope" in a loud voice.
LSA-C.Cr.P. Art. 770 sets forth the type of prejudicial remarks which form mandatory grounds for a mistrial:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
(3) The failure of the defendant to testify in his own defense; or *539 (4) The refusal of the judge to direct a verdict.
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
As can be seen, the remark in this case does not fall under LSA-C.Cr.P. Art. 770, but deserves consideration under LSA-C. Cr.P. Art. 771, which provides in pertinent part:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770: ...
In such cases, on motion of the defendant, the court may grant a mistrial if he is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
The defendant has failed to show any prejudice created by this remark. Although an admonition may have been proper, defense counsel failed to seek an admonition of the jury under LSA-C.Cr.P. Art. 771. Under the facts of this case, the trial court did err in refusing to grant defendant's request for a mistrial.

ASSIGNMENTS 20, 23 & 24
The defendant argues several assignments of error concerning communications between jurors and witnesses. In assignment of error twenty, the defendant urges the trial court erred in failing to grant a mistrial when, as the jury was filing out of the courtroom, a member of the jury spoke to Jim Tuten and asked whether Tuten knew a former officer with the Ruston Police Department and Tuten answered that he did.
In assignment of error twenty-four, defendant argues the trial court erred in failing to grant a mistrial when a witness, Chief Fred Ford, engaged in conversation with a juror as the jury was filing out of the courtroom.
It is well settled that communications between jurors and witnesses in a criminal trial, without a showing that the defendant was prejudiced, furnishes no ground for upsetting a conviction. State v. Daniel, 378 So.2d 1361 (La.1979); State v. Green, supra.
In the present case, the defendant has failed to make any showing that the communications between the witnesses and the jurors prejudiced him in any way. As to assignment of error twenty, Tuten testified the juror asked him if he knew a former officer of the Ruston Police Department. Tuten responded affirmatively. There was no further conversation. As to assignment of error twenty-four, the defendant failed to show that the witness, Fred Ford, and the juror actually engaged in conversation.
In assignment of error twenty-three, the defendant argues the trial court erred in failing to grant a mistrial when the prosecuting attorney made a statement to a juror and to a witness, Chief Fred Ford, not to talk to each other because a motion for mistrial had already been made on a similar basis.
The prosecuting attorney testified that he saw Ford and the juror approach each other and he cautioned Ford against talking to the juror. When Ford seemed to ignore him, the prosecutor stated he indicated to Ford that a motion for a mistrial had already been made on a similar basis. There is no indication that the juror or any other member of the jury heard the prosecutor's statement. Neither Ford nor the juror were questioned regarding the incident. The defendant failed to make any showing of prejudice nor did he request an admonition under LSA-C.Cr.P. Art. 771.
These assignments of error are without merit.

*540 ASSIGNMENTS 12 & 21
In assignment of error twelve, the defendant argues the trial court erred in allowing the exhibition of scales and photographs that had not yet been admitted into evidence. In assignment of error twenty-one, the defendant argues the trial court erred in allowing Jim Tuten to testify about a set of scales and cigarette rolling papers which had also not yet been admitted into evidence. These assignments of error are without merit.
At one point in the trial, the defendant objected to the prosecutor displaying, in view of the jury, a set of scales. Later in the trial, the prosecutor elicited from Jim Tuten testimony regarding the use of cigarette papers and scales of the type seized from the defendant. Tuten testified these items were commonly associated with the use and distribution of marijuana. These items were then properly admitted into evidence and the jury was allowed to view the items. Earlier, a picture of the scales along with marijuana and money seized from the defendant was properly admitted into evidence. Defendant has failed to show any prejudice or any error committed by the trial court which would support these two assignments of error. Therefore, these assignments of error are deemed meritless.

ASSIGNMENT 25
In assignment of error twenty-five, the defendant argues the trial court erred in allowing the state to ask leading questions of its own witness, Glen Jackson.
The defendant claims the prosecution impermissibly led its witness in the following exchange:
Q. [by the prosecutor] Did you have anything in your pockets?
A. [by the witness] Oh no. Nothing but some money.
Q. [by the prosecutor] Okay what kind of money did you have in your pockets?
A. [by the witness] I had one twenty and two tens.
Q. [by the prosecutor] Are you certain that you had two ten dollar bills?
LSA-R.S. 15:277 provides:
A leading question is one which suggests to the witness the answer he is to deliver, and though framed in the alternative, is inadmissible when propounded to one's own witness, unless such witness be unwilling or hostile.
It is not clear from the last question if the prosecution was in fact leading the witness or instead, attempting to gain clarification of the witness' answer. Assuming for the sake of argument that the last question propounded by the prosecution was a leading question, the defendant has failed to show that the question in any way prejudiced his rights, or that the actions of the prosecution constituted an attempt to prejudice his rights. A verdict will not be disturbed on the basis of a leading question absent such a showing. State v. Quincy, 363 So.2d 647 (La.1978); State v. Swift, 363 So.2d 499 (La.1978).

ASSIGNMENT 26
In assignment of error twenty-six, the defendant argues the trial court erred in allowing the state to impeach the testimony of its own witness, Glen Jackson. LSA-R.S. 15:487 provides:
No one can impeach his own witness, unless he have (sic) been taken by surprise by the testimony of such witness, or unless the witness show (sic) hostility toward him, and, even then, the impeachment must be limited to evidence of prior contradictory statements.
The defendant did not offer specific instances in which the state sought to impeach its own witness. The record reveals instances in which the state attempted to clarify answers given by the witness. Because the defendant has failed to show that the state impermissibly sought to impeach its witness, this assignment of error is without merit.

ASSIGNMENT 27
In assignment of error twenty-seven, the defendant claims the trial court erred in refusing to allow defense counsel to argue to the jury that the only type of *541 marijuana that is illegal is "marijuana, tetrahydrocannabinols." This argument is totally meritless.
Defendant argues that there is such a thing as legal marijuana and he contends that his position was supported at trial by the testimony of the state's expert witness, Jim Tuten. Defendant argues that LSA-R. S. 40:964 and LSA-R.S. 40:966, which prohibit the use, possession or distribution of marijuana, prohibits only a type of marijuana known as tetrahydrocannabinols. Defendant bases this argument on the listing of Schedule I controlled dangerous substances contained in LSA-R.S. 40:964. This schedule lists marijuana, tetrahydrocannabinols, or chemical derivatives thereof, as controlled dangerous substances.
Defendant's argument is erroneous. First, he has failed to correctly read the listing in the statute. The statutes are structured disjunctively and lists as controlled dangerous substances, marijuana, or tetrahydrocannabinols or chemical derivatives of tetrahydrocannabinols.
Second, tetrahydrocannabinol is the chemical ingredient in marijuana that causes the intoxicating effect. This chemical is frequently referred to as THC. It is not a separate species of marijuana. Marijuana, of course, by chemical definition, contains THC.
Third, the defendant errs in arguing that the state's expert witness supported his position that there exists such a thing as legal marijuana. The record simply does not support the view that the expert made such a statement. The exchange between defense counsel and the state's expert is as follows:
Q. [by defense counsel] Are you aware that all types of marijuana are not illegal?
A. [by witness] The cannabis stative L strain of marijuana is classified and marijuana is classified as a controlled dangerous substance under schedule # 1.
Q. [by defense counsel] Okay. But that is the only one that is so-classified under schedule # 1, is it not?
A. [by witness] Answer if given, not audible.
Q. [by defense counsel] Okay.
BY MR. MAY
OF COUNSEL FOR THE STATE: Your Honor, excuse my interruption. I'm not sure that answer was picked up on the record.
BY THE COURT: If you will answer it please Officer Tuten?
A. [by witness] Yes.
This exchange shows that the expert witness said marijuana was classified as a controlled dangerous substance. He did not say that there was such a thing as legal marijuana. The argument that some types of marijuana are legal has been raised previously and rejected by this court. Cf. State v. Bates, 301 So.2d 619 (La.1974).

ASSIGNMENT 28
In assignment of error twenty-eight, the defendant argues the trial court erred in refusing to allow the introduction into evidence by the defendant of pages 98 and 99 of a transcript of testimony previously given by Glen Jackson.
LSA-R.S. 15:493 provides:
Whenever the credibility of a witness is to be impeached by proof of any statement made by him contradictory to his testimony, he must first be asked whether he has made such statement, and his attention must be called to the time, place and circumstances, and to the person to whom the alleged statement was made, in order that the witness may have an opportunity of explaining that which is prima facie contradictory. If the witness does not distinctly admit making such statement, evidence that he did make it is admissible.
The defendant offered the transcript of prior testimony by Glen Jackson in an attempt to impeach the witness. The record indicates Jackson did not initially admit making the statements attributed to him. At that point, the defendant should have been allowed to use prior inconsistent statements to impeach the witness. The trial court erred in refusing to allow admission *542 of the statements. However, a review of the record reveals that this constituted harmless error under the particular facts of this case. LSA-C.Cr.P. Art. 921. The jury was clearly informed of Jackson's earlier statements and their inconsistent nature through cross-examination of the witness by defense counsel. State v. Gomez, 365 So.2d 1313 (La.1979); State v. Wilson, 360 So.2d 166 (La.1978).

ASSIGNMENTS 29 & 30
In assignment of error twenty-nine, the defendant argues the trial court erred in allowing the prosecutor to argue to the jury that according to the "book" the vegetable substance identified as marijuana is illegal.
In assignment of error thirty, the defendant claims the trial court erred in allowing the prosecutor "to argue to the jury what the law says, without allowing the attorney for the defendant to so argue the law."
In these two assignments of error, the defendant again contends that there is legal marijuana and he should have been allowed to present that argument to the jury. Defendant also claims that only the court, and not the prosecutor, may set forth to the jury the applicable law in a case. Both arguments are meritless.
As stated earlier, defendant's argument regarding legal marijuana is erroneous and the trial court acted properly in refusing to allow defense counsel to make such an erroneous argument to the jury.
Although the jury is ultimately bound to follow the law given by the trial judge in his jury charge, the defendant is in error in contending that the prosecution was precluded from mentioning the law applicable to the case in his closing argument. LSA-C.Cr.P. Art. 774 provides that arguments of counsel are confined to evidence admitted, lack of evidence, to conclusions of fact the parties may have drawn from the evidence and "the law applicable to the case."
These assignments of error have no merit.

ASSIGNMENT 31
In assignment of error thirty-one, defendant argues the trial court erred in failing to grant a mistrial when the prosecutor, in his closing argument, told the jury that the defendant should have proven who was in the house on the night in question. This argument is meritless.
A review of the record indicates the prosecutor did not make such a statement. Therefore, there is no factual basis for this argument.

ASSIGNMENT 32
In assignment of error thirty-two, the defendant argues the trial court erred in allowing the jury to examine, and the prosecutor to exhibit to the jury, an envelope addressed to the defendant. This argument is meritless.
In his closing argument, defense counsel argued the state failed to prove that the defendant owned the mobile home from which the marijuana was recovered. In rebuttal, the prosecutor exhibited an envelope addressed to the defendant which had been admitted in evidence and which had been recovered in the search of the defendant's house trailer. LSA-C.Cr.P. Art. 774 clearly allows the prosecutor to display to the jury evidence admitted during the trial and to present arguments concerning the effect of that evidence. The defendant failed to show any error in the procedure followed by the trial court during the state's argument.

ASSIGNMENTS 33 & 34
In assignment of error thirty-three, the defendant argues the trial court erred in allowing the prosecutor to refer to friends of Glen Jackson who were present in the courtroom. In assignment of error thirty-four, the defendant argues the trial court erred in allowing the prosecutor to argue that the case was serious to the community. These assignments are meritless.
The reference to friends of Glen Jackson was an argument by the state that some credibility should be afforded Jackson's testimony because he came into open court and testified. There was nothing improper or prejudicial about the remark.
*543 In assignment of error thirty-four, the state was responding to an argument by defense counsel that the charges involved in the case were serious to the defendant. In response to that argument, the state remarked, "Who else in the community are these serious charges to?" The remark was not prejudicial and the topic was not pursued by the prosecutor. The context in which the statement was made shows that it was not inflammatory. The trial court did not err in failing to grant a mistrial on the basis of that statement.

ASSIGNMENTS 35 & 38
In assignment of error thirty-five, the defendant argues the trial court erred in failing to properly instruct the jury as to the definition of marijuana, to include "marijuana, tetrahydrocannabinols," at all points where the word "marijuana" was used in the jury instructions.
In assignment of error thirty-eight, the defendant argues the trial court erred in refusing to give defendant's requested jury instruction number 5 to the effect that in order to convict the defendant, the state must prove beyond a reasonable doubt that the substance in question in this case was tetrahydrocannabinols.
This argument has been dealt with above. The trial court did not err in failing to instruct the jury on an erroneous premise of law.

ASSIGNMENTS 36 & 37
In assignment of error thirty-six, the defendant claims the trial court erred in giving the jury an improper definition and/or explanation of the law on the defense of entrapment.
In assignment of error thirty-seven, the defendant argues the trial court erred in refusing to give defendant's requested jury instruction regarding entrapment. These arguments are meritless.
LSA-C.Cr.P. Art. 807 provides:
The state and the defendant shall have the right before argument to submit to the court special written charges for the jury. Such charges may be received by the court in its discretion after argument has begun. The party submitting the charges shall furnish a copy of the charges to the other party when the charges are submitted to the court.
A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given.
The defendant's requested jury instruction, citing State v. Batiste, 363 So.2d 639 (La.1978), is as follows:
Under the generally accepted view, an entrapment is perpetuated when a law enforcement official or a person acting in cooperation with such an official, for the purpose of obtaining evidence of the commission of an offense, solicits, encourages or otherwise induces another person to engage in conduct constituting such offense when he or she is not then otherwise disposed to do so.
If you find entrapment present in the present case you should not vote guilty.
The jury instruction actually given by the court is as follows:
A defendant who is instigated or induced by a law enforcement officer or someone acting for him into the commission of a crime which he otherwise had no intention of committing is not guilty because he was entrapped. Entrapment is shown when it appears that an officer or someone acting for an officer instigated the defendant to commit an offense which the defendant otherwise would not have committed and had no intention of committing. It is not entrapment, however, if the defendant already had the requisite criminal intent and the officer or someone acting for him merely furnished the defendant with the opportunity to commit the offense. The fact that an opportunity is furnished or that the defendant is aided in the commission of a crime which originated in his own mind is no defense. There's clear distinction between inducing a person to commit a crime and setting a trap to catch a person who (sic) carrying out criminal designs *544 of his own conception. The primary emphasis is on whether or not the defendant had a pre-disposition to commit the crime. The reason for this defense is simple. Officers of the law may not incite crime, merely to punish the criminal. Thus if you find one, that the defendant did not have an intent to commit the offense charged before being instituted (sic) to commit it and two, that the defendant was instigated to commit the offense charged by a law enforcement officer or one acting as an officer's agent, then you must find the defendant not guilty.
The record shows that the charge given by the court included the special charge on entrapment requested by the defendant. The trial judge's charge is taken directly from Louisiana Judge's Bench Book, Vol. 1, Jury Instructions, Criminal (1978).
Defendant's assignment of error is meritless.

ASSIGNMENT 40
In assignment of error forty, the defendant argues the trial court erred in refusing to require the state of Louisiana to turn over to defense counsel the entire taped statement of Glen Jackson, contrary to the requirements of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1965). This argument is meritless.
The defendant filed a motion for production of the taped statement of Glen Jackson, or in the alternative for an in camera inspection by the court to determine if the statement contained exculpatory evidence. In response to that motion, the tape was turned over to the court. The court made an in camera inspection and provided defendant with those portions of the statement that might be deemed exculpatory. The defendant did not request that the taped statement be sealed and made part of the record on appeal. See State v. Oliver, 430 So.2d 650 (La.1983). From the record before us, we cannot say that the trial court erred in allowing the defendant only those portions of the taped statement found to be exculpatory following the trial court's in camera inspection.

ASSIGNMENT 43
In assignment of error forty-three, the defendant claims the trial court erred in denying his motion to quash filed September 10, 1985.
In this motion, the defendant objected to the joinder of offenses. The defendant claims that the joining of Count 1, distribution of marijuana, and Count 2, possession with intent to distribute marijuana, constituted a misjoinder of offenses because the defendant would testify as to Count 1 but not as to Count 2 and that the offenses are different and not connected in time or place.
The trial court minutes indicate this motion was denied because it was not filed within 15 days after arraignment. LSA-C. Cr.P. Art. 521, 535.
As with defendant's motion to suppress, the defendant has failed to provide this court with a transcript of the hearing on the motion to quash.
However, it appears that these offenses were properly joined under LSA-C.Cr.P. Art. 493. The offenses are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan and are triable by the same mode of trial.
Even though legally joined, offenses may be severable if the jury would be confused by the various counts; the jury would be unable to segregate the various charges and evidence; the defendant would be confounded in presenting his various defenses; the crimes charged would be used by the jury to infer a criminal disposition; or the charging of various crimes would make the jury hostile. State v. Washington, 386 So.2d 1368 (La.1980).
Neither the charges nor the evidence adduced to prove them were complex. The evidence of each offense was easily distinguished, and the charges relatively simple. The defendant made no showing as to how the jury would become confused, or that his defense was confounded by the joinder. Nor do we perceive that the jury would be prejudiced or *545 hostile toward the defendant due to the joinder of these offenses. This assignment of error has no merit.

ASSIGNMENT 45
In assignment of error forty-five, the defendant argues the trial court erred in denying defendant's motion in arrest of judgment.
The defendant filed a motion in arrest of judgment pursuant to LSA-C.Cr.P. Art. 859, claiming the bill of information which was filed against him was substantially defective. He contends that although the bill of information charged him with possession with intent to distribute marijuana and distribution of marijuana, it is defective in that it did not refer to "marijuana tetrahydrocannabinols." Defendant's argument that "marijuana, tetrahydrocannabinols" is the only type of illegal marijuana has been rejected above and is again rejected here.

ASSIGNMENT 46
In assignment of error forty-six, defendant claims the trial court erred in denying his motion for new trial. In the motion for new trial, the defendant claims the verdict against him was contrary to the law and the evidence because the evidence was insufficient to support the convictions. Defendant claims the state offered no proof that the substance involved was a controlled dangerous substance, that the defendant exercised dominion and control over the substance, or that others did not have access to the store or mobile home where the marijuana was found. Defendant's argument is meritless.
In considering the standard of review for sufficiency of evidence, the reviewing court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Nealy, 450 So.2d 634 (La.1984).
The analysis by the crime laboratory was more than adequate to establish that the substance which the defendant distributed to Glen Jackson and the substance seized from the defendant's mobile home was marijuana, which is a controlled dangerous substance. As to Count 1 of the information charging the defendant with distribution of marijuana, Glen Jackson testified that the defendant sold him a bag of marijuana. Officers outside the store saw the defendant hand the package to Jackson. The package was recovered from Jackson immediately after he exited the defendant's store. This evidence clearly proves beyond a reasonable doubt that the defendant committed the offense of distribution of marijuana.
As to Count 2 of the information which charges the defendant with possession of marijuana with intent to distribute, law enforcement officials obtained a search warrant for the defendant's residence. It was well known that the defendant operated the store and lived in the mobile home beside the store. Inside the mobile home, law enforcement officials found quantities of marijuana indicating that the defendant was distributing this controlled dangerous substance and also found a set of scales commonly used to weigh the substance for distribution. Expert testimony was presented to the jury which described the manner of operation utilized by those who distribute controlled dangerous substances. The evidence presented to the jury was sufficient to justify defendant's convictions.

ASSIGNMENTS 47 & 48
In assignments of error forty-seven and forty-eight, the defendant argues the trial court erred in failing to follow the sentencing guidelines of LSA-C.Cr.P. Art. 894.1 and in imposing sentences which are unconstitutionally excessive. These assignments of error have merit and for the following reasons we vacate the sentences and remand to the trial court for reconsideration and resentencing.
The defendant was 28 years old at the time of sentencing on April 11, 1986. The trial court did not order a presentence investigation. At the sentencing hearing, *546 the trial court sentenced the defendant on each count to the maximum penalty possible under LSA-R.S. 40:966, ten years at hard labor and a fine of $15,000.00. The court also ordered the defendant to serve an additional sentence of one year in default of payment of the fine on each count. The court also ordered that the sentences on Count 1 and Count 2 be served consecutively, rather than concurrently.
Our review of the sentencing proceedings reveal that the trial court did not adequately state for the record the sentencing considerations set forth in LSA-C.Cr.P. Art. 894.1 which would justify the imposition of maximum penalties for these offenses.
In articulating the reasons for sentence, the trial court indicated the defendant had a prior felony conviction for attempted distribution of marijuana on April 12, 1982 and was therefore not eligible for suspended sentences on these convictions. Although the trial court stated that the defendant was an habitual offender, the record does not reflect that he was adjudicated as such pursuant to LSA-R.S. 15:529.1. The court also found that imprisonment would not impose an undue hardship on the defendant. These are very general statements by the court and are not supported in the record in light of the absence of a presentence investigation in which reference was made to mitigating factors. Therefore, the sentences must be vacated and the defendant's case remanded for resentencing in compliance with the provisions of LSA-C.Cr.P. Art. 894.1.
Also, a review of the record fails to reveal an adequate articulation of the reasons for sentence in light of the consecutive sentences actually imposed. LSA-C. Cr.P. Art. 883 provides that if a defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively.
In the present case, the two offenses for which the defendant was convicted arise from "the same act or transaction, or constitute parts of a common scheme or plan." The same factors which permit joinder of the offenses militate in favor of concurrent sentencing, unless the trial court articulates other appropriate factors in imposing sentence. State v. Ashley, 463 So.2d 794 (La.App. 2d Cir.1985); State v. Gage, 399 So.2d 1174 (La.1981). The trial court should explain the reasons for imposing consecutive sentences. In this case, there was no articulation of the factors considered which would explain the imposition of these two maximum sentences, imposed consecutively. Therefore, the sentences imposed, being apparently severe, must be set aside and this case must be remanded to the trial court for resentencing.
Also, we note that the trial court ordered the defendant to serve additional terms of imprisonment at hard labor in lieu of payment of the fines. At the trial and at resentencing, the defendant was represented by retained counsel. The record does not indicate that the defendant was indigent at the time of sentencing. However, the defendant was subsequently determined to be an indigent and allowed to proceed with this appeal in forma pauperis. The jurisprudence reveals that a court may not impose default time in lieu of payment of a fine upon an indigent defendant, when to do so would cause the term of imprisonment to exceed the statutory maximum, as it would in this case. State v. Garrett, 484 So.2d 662 (La.1986); State v. Williams, 484 So.2d 662 (La.1986); State v. Barlow, 488 So.2d 180 (La.1986); State v. Pinkney, 488 So.2d 682 (La.1986); State v. Gooden, 490 So.2d 622 (La.App. 2d Cir.1986). Upon remand, the trial court must also reconsider this aspect of the sentences to be imposed in light of the defendant's indigency. In addition, we note that LSA-C.Cr.P. Article 884, dealing with the imposition of imprisonment in lieu of payment of fines, does not authorize the default time to be served at hard labor.

ASSIGNMENTS 49, 50 and 51
At the trial which resulted in the defendant's convictions, four black jurors were *547 excluded from jury service, three by peremptory challenges exercised by the prosecutor, and one for cause because she was no longer a resident of the parish.
When this case was originally before this court on appeal, no racially neutral explanation appeared in the record which would support the state's exercise of peremptory challenges of the three black members of the jury venire. Based upon Batson v. Kentucky, supra, we found that the defendant had properly objected to the state's jury selection strategy and had established a prima facie case that the state had used peremptory challenges to exclude prospective jurors on the basis of race. Therefore, we remanded this case to the trial court to allow the state an opportunity to set forth on the record the reasons for exercising peremptory challenges of the disputed prospective jurors. We instructed that if the state failed to provide racially neutral explanations for the use of the peremptory challenges, then the trial court must vacate the convictions and declare a mistrial.
Following the hearing on remand, the trial court found the state had carried its burden of showing racially neutral reasons for the use of its peremptory challenges of the three black prospective jurors. The defendant again appealed his convictions and sentences, reurging his original assignments of error and assigning three additional assignments of error dealing with the Batson hearing. We find each of the assignments of error to be meritless.
In assignment of error forty-nine, the defendant argues the trial court erred in allowing the prosecutor handling the defendant's trial to testify regarding his subjective appraisal of the three black prospective jurors who were excused by the use of peremptory challenges. Defense counsel objected at the hearing to any testimony not reflected by the transcript of the voir dire examination. This argument is meritless.
In U.S. v. Forbes, 816 F.2d 1006 (5th Cir.1987), the court required the prosecutor to state for the record his reasons for making the challenges. In that case, the prosecutor stated that one juror had two sons who were in legal trouble and the second juror was challenged because she sat with her arms crossed during voir dire and impressed him as being hostile to serving on the jury.
In U.S. v. Williams, 822 F.2d 512 (5th Cir.1987) the defendant objected to the prosecution's use of three peremptory challenges of black prospective jurors. The prosecution then stated for the record reasons for exercise of the peremptory challenges. The first prospective juror was challenged because he was acquainted with defense counsel. The second prospective juror was challenged peremptorily because he had previously been arrested by a government witness and was reputed to use narcotics. The third juror was challenged because he was regarded by law enforcement officials in his community as "a poor juror for a drug case." No further explanation was offered as to why this prospective juror would be a "poor juror" for such a case. All three explanations were accepted by the court. Therefore, considering the explanations given in other cases for exercise of peremptory challenges of black prospective jurors, we find that the trial court did not err in allowing the prosecutor to testify as to his subjective determination regarding the use of the peremptory challenges in the present case.
In assignment of error fifty, the defendant argues the trial court erred in refusing to allow defense counsel to question the prosecutor regarding the jury selection process used in the previous trial of this case which commenced September 16, 1985 and ended in a mistrial. The defendant contends that at the previous trial, since an all white jury was selected, defense counsel should have been allowed to question the prosecutor regarding that trial. The trial court correctly sustained the state's objection to this line of questioning on grounds of relevancy.
Under Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), in order to overturn a jury verdict based upon unconstitutional exclusions of a particular group from a jury, the defendant was required to show a systematic exclusion by *548 the state of members of the race or group over a period of time. Batson modified the standard set forth in Swain. The U.S. Supreme Court recognized that a defendant may make a prima facie showing of purposeful racial discrimination in selection of the jury venire by relying solely on the facts concerning its selection in his case. Therefore, the jury selection process employed in the defendant's prior trial was not necessarily probative of the motives of the state in exercising peremptory challenges at the second trial.
In assignment of error fifty-one, the defendant argues the trial court erred in finding that the state has provided racially neutral explanations for its exercise of peremptory challenges. This argument is meritless.
In Batson, supra, the court stated that since the trial judge's findings regarding the proper exercise of peremptory challenges will turn largely upon an evaluation of credibility, a reviewing court should give those findings great defference. U.S. v. Forbes, supra; U.S. v. Williams, supra. In the present case, the trial court found that the prosecutor provided racially neutral explanations for the use of the disputed peremptory challenges. We do not find the trial court's evaluations to be in error.
In the present case, the prosecutor testified that one juror was challenged because her brother had been tried for armed robbery and he had been defended by present defense counsel. At her brother's trial, the prospective juror had testified as an alibi witness. In addition, when questioned by the state on voir dire, this prospective juror did not mention her brother's offense, but did say that she was acquainted with defense counsel and that defense counsel had aided her son in getting his driver's license back after an accident.
Acquaintance with counsel or connection with other criminal prosecutions have both been found to be sufficient explanations for exercise of peremptory challenges under post-Batson decisions. U.S. v. Forbes, supra; U.S. v. Williams, supra; State v. Brown, 507 So.2d 304 (La.App. 3rd Cir. 1987).
A second black prospective juror was challenged because her husband was belligerent to local law enforcement officials and the prosecutor believed that the prospective juror's husband had misdemeanor charges pending in the parish. Cf. U.S. v. Forbes, supra. The prosecutor clearly testified that race had nothing to do with the exercise of this peremptory challenge.
The final black prospective juror challenged peremptorily by the prosecution was a young, black, unemployed mother of an illegitimate child. The prosecutor testified that he felt this lady was mentally retarded and not sufficiently aware of what was happening in the courtroom. The prosecutor testified that the juror's condition was so apparent to him that he asked no questions of her on voir dire.
In State v. Eames, 365 So.2d 1361 (La. 1978), Justice Dennis, in a concurring opinion, stated that the state must show that the exercise of peremptory challenges was not racially motivated and that although the reasons for exercising such challenges need not be sufficient to support a challenge for cause, they should appear to be applied consistently to similarly situated jurors of other groups.
In his brief, the defendant argues that during voir dire the state had failed to challenge a white male juror who was also of questionable intellectual capabilities. Although evidence on the issue is scant, the defendant is apparently arguing that the state failed to carry its burden of providing a racially neutral explanation for the challenge of the black juror since the white juror was not challenged.
At the Batson hearing, the prosecutor stated he was aware that the white juror had some problems, but the juror seemed alert, was willing to serve and appeared to be capable of serving on the jury, whereas the black juror did not appear capable of comprehending the proceedings. The trial court accepted these explanations.
The record supports the trial court's ruling finding that the state provided racially neutral explanations for the exercise of its *549 peremptory challenges of the black prospective jurors in this case.

CONCLUSION
For the above stated reasons, we affirm the defendant's convictions for distribution of marijuana and possession of marijuana with intent to distribute. We affirm the trial court ruling that the state provided racially neutral explanations for the exercise of its peremptory challenges of black prospective jurors.
However, we vacate the sentences imposed by the trial court and remand to that court for resentencing and further articulation, both as to the length of the sentences imposed, and a determination of whether the sentences are to be served consecutively or concurrently. We also remand for reconsideration of that portion of the sentences requiring the defendant to serve additional terms of imprisonment in lieu of payment of the fines.
CONVICTIONS AFFIRMED; SENTENCES VACATED; REMANDED FOR RESENTENCING.

ON APPLICATION FOR REHEARING
Before HALL, LINDSAY, FRED W. JONES, Jr., MARVIN and JASPER E. JONES, JJ.
Rehearing denied.
NOTES
[1] LSA-R.S. 15:501 was amended by Acts 1986, No. 675, § 1 to read as follows:

A. The party seeking to introduce a certificate made in accordance with R.S. 15:499 shall, not less than ten days prior to the commencement of trial, give written notice of intent to offer proof by certificate. Such notice shall include a copy of the certificate.
B. The party against whom such a certificate is offered shall be permitted to subpoena on cross-examination the person who performed the examination or analysis of the evidence. If the subpoena is requested at least five days prior to the commencement of trial or the person subpoenaed responds to the subpoena, the certificate shall not be prima facie proof of its contents or of proper custody.
The change has no bearing on this opinion.